**Nayda R. FERNANDEZ, et al., Plaintiffs, Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

**No. 87–1130.**

United States Court of Appeals, First Circuit.

Submitted July 31, 1987.

Decided Aug. 20, 1987.

Rafael Lizardi Pineiro, on brief, for plaintiffs, appellants.

Russell Shultis, Office of the General Counsel, Social Sec. Div., Dept. of Health and Human Services, Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., and Wanda Rubianes Collazo, Hato Rey, P.R., on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

On June 8, 1982 Miguel Merced filed an application for disability insurance benefits alleging disability since November 30, 1980. The application was denied initially on August 9, 1982 and upon reconsideration on September 27, 1982 because Merced's liver condition (cirrhosis due to alcoholism—inactive) was in remission. Merced did not pursue his administrative remedies and, therefore, the decision became final.

On September 1, 1984 Merced died in a car accident. On September 7, 1984, his widow Nayda R. Fernandez, as a proper party under 20 C.F.R. § 404.932 (1986), filed the current application seeking reopening of the prior application. On November 2, 1984 this application was denied, and reconsideration was denied on April 5, 1985. After a requested evidentiary hearing, the administrative law judge ("ALJ") found on July 25, 1985 that there was no error in the previous decision and, therefore, "the period covered by said decision was adjudicated, and is res judicata under the provisions of § 404.957(c)(1) of Regulation No. 4." However, the ALJ also found that he could not dismiss the case entirely on the basis of res judicata because there was a period of time which was not adjudicated by the previous determination: from September 28, 1982 (the next day after the original decision was issued) to December 31, 1983 (the date Merced ceased to be insured). As to this period of time, the ALJ found that Merced suffered from a liver disease "by history" and pancreatitis, but that he did not have a "severe impairment" which significantly limited his ability to perform basic work-related activities on or before December 31, 1983. 20 C.F.R. § 404.1520(c), § 404.1521 (1986).

The ALJ's decision became final when the Appeals Council approved it on November 5, 1986, but only after considering new evidence submitted by Merced's attorney.[1]

Fernandez filed a petition for review before the United States District Court for the District of Puerto Rico, and on January 12, 1987 the district court entered its opinion, stating that considering the record as a whole, the Secretary's decision was supported by substantial evidence. Specifically, the court found that "the evidence does not support a severe impairment due to a liver condition," and there was no evidence to show "plaintiff suffered from a significant mental condition."

Fernandez appeals from the district court's opinion and argues that the decision of the Secretary of Health and Human Services is not supported by substantial evidence. We may not review the decision not to reopen the adjudicated period. See Califano v. Sanders, 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977). Hence, the only question before us is whether the decision that claimant suffered no severe impairment from September 28, 1982 through December 31, 1983 is supported by substantial evidence on the record as a whole. We review the evidence.

Claimant's wife and claimant's sister, who lived next door, testified before the ALJ. They described claimant as an alcoholic who could not control his drinking. They said claimant would shake, hear voices, and be disoriented, forgetful, and aggressive. His legs would swell and he would scream with pain. In argument to the ALJ, claimant's attorney contended claimant was disabled because of liver disease, alcoholism, nerves, and a pancreas condition.

The medical evidence was basically as follows. In January 1981, claimant underwent a pancreas operation which showed acute pancreatitis and evidence of cirrhosis of the liver. Prior to the operation, Merced complained of stomach pain and confessed to a history of heavy drinking.

Claimant was discharged from the hospital at the end of January 1981. Thereafter, until his death in September 1984, he peri-

---

1. The new evidence consisted of a memorandum from Merced's attorney, a medical report by Dr. Yocasta Brugal, and an autopsy report.

odically visited clinics. To the extent we can decipher the clinic notes, they indicate the following. Three months after the operation (March 1981) the notes record "case of alcoholic chronic and pancreatitis doing much better." In July 1981, claimant was "asymptomatic." The diagnostic impression of "alcoholism, chronic" continued. In March 1982, claimant was reported as "feeling well" and as not having ingested alcohol since his operation. In April 1982, he complained of abdominal pain with nausea.

On July 2, 1982, claimant was evaluated by Dr. Marxuach, who diagnosed "chronic liver disease, by history," "R/O recurrent pancreatitis," and "anxiety reaction." He concluded claimant could stand and walk six hours per day, sit six hours, and lift up to 50 pounds.

A week later, claimant returned to the clinic complaining of epigastric pain after meals. "Abnormal liver function test R/O chronic liver disease due to alcoholism (inactive)" was recorded, and claimant was told to return in four months. In November 1982, his prescriptions were continued and diagnoses of chronic hepatic disease, chronic alcoholism, and acute pancreatitis were recorded. Further visits followed on January 20, 1983, March 1983 ("doing fine"), April 22, 1983 (doing fine except for occasional coughing at night), July 1983 (complaints of leg cramps), October 1983, February 1984 (nocturnal cramps; compensated chronic liver disease), and May 1984.

A March 1983 report from the Department of Social Services states claimant was "partially disabled to work."

The main difficulty with this case is that while there is a fair amount of raw medical data, there is very little in terms of an evaluation of it, that is, a translation of the diagnoses and findings into functional work-related terms, in the period postdating the unappealed September 27, 1982 denial of benefits. We review what little there is.

First, is a one-sentence report dated December 21, 1984 from Dr. Marxuach, the disability determination program physician who had examined claimant in 1982, which reads in its entirety, as follow:

From a review of the M/E [medical evidence] available condition of 12/83 was that of compensated chronic liver disease which is not severe.

Following his report is a page entitled "Medical Consultant Case Analysis." It is entirely illegible.

Next is the query from disability examiner Vargas (who apparently is not a doctor) to Dr. Fragoso, a program physician. Examiner Vargas wrote

According to listing 5.05 in cases of chronic liver disease, you must have the lab levels as listed on repeated examination for at least 5 [months]. It is true that in the hospitalization [claimant] had in 1/81 the labs were as described in the listing but not for a period of 5 months. I consider condition is severe but doesn't meet or equals.

In other words, examiner Vargas would appear to have concluded that claimant satisfied step 2 (his liver condition was severe), that he did not qualify for benefits under step 3 (the listings), and hence, presumably, that it was necessary to go to steps 4 and 5 to determine whether claimant was disabled.

Dr. Fragoso's response to examiner Vargas is illegible. It might be inferred, however, that Dr. Fragoso indicated claimant's condition was severe, for examiner Vargas, perceiving a conflict (presumably between Dr. Marxuach's "not severe" response and Dr. Fragoso's response, whatever it was), wrote as follows to a third program doctor:

Claimant had a liver condition. On 1/81 claimant was hospitalized and the labs done were abnormal. However, lab results on 3/81, 3 months later were normal.

It is my impression that [claimant's] condition did not meet or equal the listing of severity.

In view that there are 2 discrepant medical opinions in file from our medical staff, your final assessment is needed.

The third doctor's response is illegible.

The outcome of this correspondence was crystallized in a "Disability Determination

and Transmittal" formal denial of benefits signed by examiner Vargas and a fourth review physician, Dr. Martin, a "dermatologo" (dermatologist). The formal denial reads,

> Claimant has liver cirrhosis pancreatitis and alcoholism.
>
> The above cited medical evidence reveals that [claimant] has been hospitalized due to abdominal pains. There's no evidence of major functional restrictions by the date claimant's quarter coverage was last met. The evidence in file fails to reveal severity of condition on or before 12–31–83....[2]

The gist of the above would appear to be that claimant's liver condition, pancreatitis, and alcoholism have all been considered and found not severe.

The one remaining evaluation of the data is from Dr. Brugal, who was retained by claimant's attorney. Dr. Brugal gave a somewhat detailed explanation, based on the autopsy report and the reports of claimant's 1981 hospitalization and operation, why she believed claimant was totally disabled as of December 31, 1983 when insured status expired. However, as she did not appear to be aware of lab results after claimant's 1981 discharge, her conclusions are subject to attack.

We are left then with Dr. Marxuach's one-sentence assertion that claimant's liver condition was not severe, the correspondence between examiner Vargas and the program doctors, and the dermatologist's rather conclusory evaluation of claimant's liver condition, pancreatitis, and alcoholism.

We conclude the denial of benefits based on the finding of no severe impairment is not supported by substantial evidence. Decisive to us is the fact that the ALJ's opinion, as well as the program physician's reports, predated the issuance of Social Security Ruling 85–28, which clarified what was meant by a "not severe impairment." It explained that only "slight" abnormalities were to be labelled "not severe." As we noted in *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1124 (1st Cir.1986), there was evidence that prior to the issuance of SSR 85–28, the severity regulation (step 2 of the sequential evaluation process) had become in practice more than the *de minimus* screening device Ruling 85–28 said it was intended to be. Hence, in view of the lack of any legible explanation for Dr. Marxuach's "not severe" conclusion, it is not apparent he employed the words "not severe" to mean that claimant's liver disease was but slight with "no more than a minimal effect on ... ability to perform basic work activities" within the meaning of SSR 85–28. How much Dr. Marxuach's opinion, since it was the strongest legible report in support of a not severe impairment finding, influenced the dermatologist is not known, of course. Nor is it apparent the dermatologist applied the correct severity standard. His opinion was based on the absence of "major functional limitations" and not, as required by SSR 85–28, a finding that the impairments were "slight" with no more than a "minimal" effect on ability to do basic work activities. In view of these uncertainties and the scantiness and illegibility of the medical evaluations, we conclude the present denial may not stand. Rather, the Secretary should proceed further in the sequential evaluation process.

*The judgment of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings.*

---

2. These findings revised a previous determination which read,

> Claimant had a liver condition and digestive disorder, back disorder and nervousness.
>
> The above cited medical evidence reveals that the claimant had a liver condition and a digestive disorder but there is no evidence of significant weight loss and laboratory findings were within normal limits. Medical evidence fails to reveal limitation of movement, weakness or atrophy due to a back condition. Medical evidence failed to reveal mental disturbances and the claimant was oriented, coherent and logical.... The evidence in file fails to reveal severity of condition on or before 12–31–83....