Juan RIVERA–TORRES,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 87–1674.

United States Court of Appeals,
First Circuit.

Submitted Dec. 11, 1987.
Decided Jan. 19, 1988.

cial review of a decision denying benefits for the period from November 23, 1983 forward. The district court remanded for reevaluation under the Social Security Disability Reform Act of 1984. A second hearing was held. The Secretary concluded claimant could perform his past jobs as iron rod cutter and tomato picker and once again denied benefits. That decision is now before us. Claimant, who was born in 1930, bases disability on headaches, arthritis, back problems, and a nervous condition. We review the evidence.

■ 1. *Mental Impairment.* The resolution of the degree of claimant's mental impairment posed a classic credibility issue: claimant's treating psychiatrist described a very severe condition while the Secretary's examining/consulting psychiatrists found a less severe condition. The medical advisor who testified at the 1986 hearing disagreed with the treating psychiatrist. The Administrative Law Judge (ALJ) articulated a reasonable basis for accepting the consulting doctors' opinions and for concluding that claimant could, from a mental standpoint, handle unskilled work not requiring very detailed or complex instructions. The resolution of such conflicts in the evidence was for the Secretary, *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir.1981), and we see no basis to disturb the Secretary's findings. Contrary to claimant's assertion, the Secretary's decision is not improperly based solely on the testimony of the medical advisor.

2. *Physical Impairment.* There are only two medical reports directed to claimant's physical ailments.

■ Claimant was evaluated by the Secretary's consulting neurologist, Dr. Manana, on May 18, 1984. Claimant reported having received a head trauma, fractured nasal bone, and loss of consciousness in 1974 while working, and he complained of headaches, joint pain, blurred vision, low back pain, and insomnia. Dr. Manana found tenderness in the thoracic and lumbar areas, spondyloarthritic changes of the lumbar spine with suggested disc narrowing of the L5–S1 intervertebral space, nor-

William Dominguez Torres, Rio Piedras, P.R., Juan A. Hernandez Rivera, Bayamon, P.R., Angel L. Cintron Carrasquillo, Santurce, P.R., and Ivan O. Gonzalez Cruz, on brief, for plaintiff, appellant.

Marlene W. Heiser, Office of the Gen. Counsel, Social Sec. Div., Dept. of Health and Human Services, Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and SELYA, Circuit Judges.

PER CURIAM.

Claimant was found disabled from June 1977 through December 1981. His benefits were then terminated. Claimant did not seek judicial review of the termination, but instead filed several new applications, all of which were denied. Claimant sought judi-

mal muscle tone and size, and no atrophy. Forward bending was limited to 60° (out of a possible 90°).

Over a year later (August 5, 1985), Dr. Manana evaluated claimant again. Claimant retained normal muscle tone and size and there was no atrophy. This time, however, Dr. Manana found mild muscle spasm in the lumbar area, diminished pin prick on the left lower extremity following a L5–S1 dermatomal pattern. Muscle strength had decreased from 5/5 in the upper extremities to 4/5, and forward bending was limited to 45°. X-rays showed dextroscoliotic tilt of the cervical spine, anterior spondylotic changes of C5 to C7 vertebrae, and mild spondyloarthritic changes of the lumbar spine. Dr. Manana diagnosed status post head trauma, post traumatic headaches by history, low back pain syndrome, L5–S1 radiculopathy, and mild lumbosacral spondyloarthritis.

Dr. Manana did not complete a residual functional capacity (RFC) questionnaire or indicate in lay terms in what manner claimant's back and other physical problems might limit his ability to sit, stand, lift, bend or perform other basic work activities. Especially where, as here, claimant complains of pain, takes pain medication (motrin), and some objective abnormalities (e.g., muscle spasm, spondyloarthritic changes of spine) have been found, we think the Secretary should obtain an RFC evaluation from the consultant who conducted the examination. *Cf.* 20 C.F.R. § 404.1513(b) and (c) (medical reports

should include a medical assessment indicating ability to do work-related activities). Nor is there even any useful RFC from a nonexamining physician. To be sure, there is a July 31, 1984 notation from a nonexamining doctor stating, without explanation, that Dr. Manana's May 18, 1984 report describes a nonsevere condition, and a second nonexamining doctor wrote on August 26, 1985 "lack of objective findings to indicate a severe impairment." These conclusory statements, which predate the Secretary's October 1985 clarification of the Secretary's severity regulation, are not helpful, however, as we cannot tell whether the doctors were properly limiting their use of the nonsevere label to *de minimis* conditions. *See McDonald v. Secretary,* 795 F.2d 1118, 1124 (1st Cir.1986) (finding of nonsevere to be made when medical evidence establishes only a slight abnormality); *Fernandez v. Secretary,* 826 F.2d 164, 167 (1st Cir.1987) (not clear doctor employed the words "not severe" to mean claimant's condition was but slight when doctor's report predated SSR 85–28).

Despite having no RFC evaluation, the ALJ concluded that claimant's musculoskeletal problems would not prevent him from performing his past work either as an iron rod cutter or a tomato picker. We find this conclusion unsupported.

According to the ALJ, the iron rod cutting job required claimant to bend and reach constantly and to lift and carry up to 25 pounds.[1] Where, as here, there is no

---

1. In actuality, the rod cutter job may have required lifting considerably more than 25 pounds.

In describing this job in his 1984 application, claimant said he, with the aid of two co-workers, had to lift iron rods weighing from 100 to 200 pounds. At the 1986 hearing, he testified that the rods weighed "between a quintal and a quintal and a half." "Quintal" is defined as follows:

"1: any of various units of weight ... equal to from 100 to about 130 pounds: hundredweight

"2: a metric unit equal to 100 kilograms...."
Webster's Third New International Dictionary 1867 (1981). One kilogram equals 2.046 pounds. Hence, under the second definition, a quintal is 220.46 pounds. A "hundredweight" is "any of various units of weight ranging from 100 to about 120 pounds...." *Id.* at 1102. In

his June 26, 1985 "vocational report," claimant, in Spanish, wrote that the rods weighed "1 quintal." This was translated as "1 hundred weight." Thus, according to the above statements, the lightest rods weighed at least 100 pounds and the heaviest may have weighed 200 pounds or more. Even when divided among three persons, the weight lifted was more than the 25 pounds the ALJ said was the maximum claimant needed to lift as a rod cutter.

Claimant's June 11, 1985 application, however, checked off the "20 lbs." box as "heaviest weight lifted" and the "up to 25 lbs." box as "weight frequently lifted/carried." The ALJ apparently relied on these check marks on a form written in English in finding claimant had had only to lift 25 pounds. Where, as here, claimant does not speak English, has only a third grade education, and has stated heavier weights in both his testimony and written application, we

residual functional capacity evaluation, the Secretary's doctor has found a restriction in forward bending ability (45° out of 90°) and a decrease in upper extremity muscle strength, and arthritic changes in the spine are present, we think the ALJ, a lay fact-finder, lacks sufficient expertise to conclude claimant has the ability to be on his feet all day, constantly bending and lifting 25 pound weights. Rather, an explanation of claimant's functional capacity from a doctor is needed. *See Berrios v. Secretary*, 796 F.2d 574, 576 (1st Cir.1986) (Appeals Council not competent to interpret and apply raw medical data; case remanded as nothing intelligible to a lay person indicates claimant can sit, bend, or reach).

We turn then to claimant's work as a migrant tomato picker. This work occurred more than 15 years prior to the period for which claimant seeks disability benefits. The Secretary's regulations provide that such remote work experience is not usually considered. 20 C.F.R. § 404.1565(a). The ALJ who conducted the 1984 hearing seemed to indicate that claimant's agricultural work was too remote and therefore was not relevant. The ALJ whose decision (1986) is now before us for review made no mention of § 404.1565(a). Normally, absent some reasonable explanation for departing from the 15 year rule, we would not uphold the denial of benefits to claimant on the ground that claimant can perform his past work as tomato picker. However, as claimant's counsel has failed to challenge the Secretary's reliance on work performed more than 15 years ago, we do not rest our decision on this basis.

There is no evidence in the record of what the tomato picking job entailed in terms of lifting, bending, and standing. When referring to his other agricultural jobs (in the sugar cane fields and with tobacco), claimant said he had had to lift 150 to 200 pound sacks. Without some evidence of what the tomato picking job involved, the decision that claimant can return to it is unsupported.

would think the ALJ should not simply choose a check mark over the testimony and statements without first pointing out and exploring the discrepancy. Particularly, explanation would

The decision of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings.

seem needed when an uncommon unit of measurement—quintal—having no fixed poundage has been used by the claimant.