923 F.2d 839
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Juana DAVILA MELENDEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1426.
 United States Court of Appeals, First Circuit.
 Nov. 14, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico; Carmen Consuelo Cerezo, District Judge.
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant U.S. Attorney, and Paul Germanotta, Assistant Regional Counsel, Department of Health and Human Services, on brief, for appellee.
 D.P.R.
 VACATED AND REMANDED.
 Before LEVIN H. CAMPBELL, TORRUELLA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 The claimant, Juana Davila Melendez, filed an application for disability benefits on December 23, 1985. She alleged that she had been unable to work since August 1983 because of a physical condition that affected her neck, left shoulder and arm, causing "constant" pain and preventing her from lifting, bending and carrying, and from sitting, standing or walking for prolonged periods. To these physical problems Mrs. Davila later added allegations of a mental disorder manifested by depression and confusion.
 
 
 2
 Mrs. Davila's claim initially was spurned at all administrative levels on the ground that she was capable of returning to her former work sewing leather goods such as wallets. The district court rejected this finding and remanded the matter for further proceedings.[1] The Secretary held a second hearing in July 1988, at which both Mrs. Davila and a vocational expert testified. The administrative law judge (ALJ) asked the vocational expert to assume that his questions concerned a person of Mrs. Davila's age, who shared her educational background and lack of transferable work skills. He then asked the vocational expert to identify the jobs, if any, available for such a person, assuming further that she had the residual functional capacity to do "light" work as that term is defined in the Secretary's regulations, 20 C.F.R. Sec. 404.1567(b), "that she has some limitation in the use of her left arm for the purpose of constantly manipulating with that arm, a situation of operating a pedal, something that requires the continuous and constant use of it," but that she could use the left arm "for the purpose of helping herself, since she is right-handed." In response, the vocational expert identified several jobs that exist in substantial numbers in the Puerto Rican economy.
 
 
 3
 On cross-examination, however, the vocational expert acknowledged that his response was limited to the assumptions in the ALJ's question. If one accepted Mrs. Davila's complaints of pain, the vocational expert said, then she "would not be able to perform these jobs and ... she couldn't perform in a sustained manner any other job in our national economy." Similarly, if one took into account Mrs. Davila's testimony about her strength limitations--that she often drops objects and lacks the strength to hold any object heavier than a cane in her hands--then "she wouldn't be able to perform these examples of work or any other in our national economy." Finally, the vocational expert conceded that if one interpreted the psychiatric profile that had been prepared by Dr. Rivera Gonzalez, a psychiatrist who had examined Mrs. Davila, to mean that she was in poor contact with reality, with limitations on her orientation, memory and interpersonal relations that made it difficult for her to relate to co-workers or supervisors, then one again would have to conclude that Mrs. Davila could not function vocationally.
 
 
 4
 In his decision, the remand ALJ first ruled that Mrs. Davila was unable to return to her former work, placing the case at step five of the standard sequential analysis and the burden of proof on the Secretary to show by "substantial evidence" that Mrs. Davila was not disabled. Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir.1982). Relying on the vocational expert's direct testimony, and crediting Mrs. Davila's testimony about her pain and strength limitations only to the extent that it corroborated his finding that she had the residual functional capacity to do "light" work, the remand ALJ found that Mrs. Davila was not disabled prior to December 18, 1987 because work existed in the national economy which she was until that time able to perform. The remand ALJ decided, however, that Mrs. Davila became disabled on December 18, 1987, when she (a) reached her fifty-fifth birthday and became a "person of advanced age" for disability purposes, and (b) developed a "significant emotional component" marked by depression and confusion, as a result of which she could "not cope with the mental demands of a competitive working environment."
 
 
 5
 The Secretary and then the district court affirmed the remand ALJ's decision, and this appeal followed, challenging the ruling that Mrs. Davila was not disabled before December 18, 1987.
 
 
 6
 * The ALJ's determination that Mrs. Davila was capable of performing light work, and the description of her functional limitations that appears in the hypothetical question he posed to the vocational expert, were based on two "RFC evaluations" found in the record. These were standard forms on which the reporting physician indicated his or her opinion of the claimant's ability to perform basic work activities by placing check marks in boxes that corresponded to different levels of functional capacity.[2]
 
 
 7
 The first RFC evaluation was prepared by Dr. Yolanda Lopez in early March 1986. Dr. Lopez, who did not examine Mrs. Davila but based her assessment on a review of the extant medical files, stated that Mrs. Davila's physical abilities were limited but that she retained the maximum capacity (1) to lift or carry fifty pounds occasionally, and twenty-five pounds frequently, (2) to stand or walk six hours in an eight-hour day, and (3) to sit about six hours in an eight-hour day. Dr. Lopez also checked boxes to indicate that Mrs. Davila could frequently climb, balance, stoop, kneel, crouch and crawl, could handle, finger, feel, see, hear and speak without limitation, but was limited in her ability to reach. Dr. Lopez also noted her opinion that Mrs. Davila had a limited ability to push or pull with her left side, and diagnosed her as suffering from left shoulder bursitis.
 
 
 8
 The second RFC evaluation form was prepared by Dr. Acevedo, another non-examining physician, in August 1986. He agreed with Dr. Lopez' report in all but two respects; according to Dr. Acevedo, Mrs. Davila could frequently lift only ten pounds, and was suffering from left shoulder peritendinitis calcarea.
 
 
 9
 These RFC evaluations were consistent with the ALJ's determination that Mrs. Davila was capable of performing a limited range of "light" work,[3] and with the assumption embodied in his hypothetical question that she was limited only in the use of her left, non-dominant arm. In this case, however, consistency does not translate into "substantial evidence." The ALJ may have relied faithfully on the RFC evaluations in finding that Mrs. Davila was not disabled before December 18, 1987, but his reliance was misplaced because those evaluation forms were prepared before, and therefore did not take into account, a diagnosis of bilateral carpal tunnel syndrome that might well have significantly affected the assessment of Mrs. Davila's functional capacity.
 
 
 10
 This diagnosis first appeared in the report of an electromyographic (EMG) examination conducted by Dr. Rita Amadeo on October 28, 1986--three months after Dr. Acevedo's RFC evaluation and eight months after Dr. Lopez's. In December 1986 Mrs. Davila was examined by Dr. Modesto Fontanez Gonzalez, who also diagnosed bilateral carpal tunnel syndrome, and who concluded that Mrs. Davila was "totally disabled for any type of gainful activity."
 
 
 11
 The discovery of bilateral carpal tunnel syndrome worked an important change in Mrs. Davila's clinical picture, and may also have changed the nature of the conclusions about functional capacity that validly could be drawn from it. Carpal tunnel syndrome is an entrapment neuropathy (i.e., a functional disturbance or pathological change in the peripheral nervous system) of the median nerve at the wrist producing parasthesias (abnormal sensations such as tingling or burning) and weakness in the hand. Harrison's Principles of Internal Medicine at 1467 (11th ed.). "Bilateral" carpal tunnel syndrome denotes a condition affecting both hands.
 
 
 12
 The RFC evaluations, which were prepared months before bilateral carpal tunnel syndrome was diagnosed, quite understandably did not take into account the effects of this condition. These evaluations suggest that Mrs. Davila's physical problems were caused by bursitis or peritendinitis and were limited in their effect to her neck, left shoulder and, perhaps, her left upper arm. Consequently, the RFC evaluations show only that Mrs. Davila had limitations in reaching, and in pushing or pulling with her left side. They do not show any limitations in her ability to perform finer motor functions such as handling or fingering (with either her left or her dominant right hand), or in her ability to lift relatively heavy weights--functions that a condition which produces weakness in both hands might be expected to affect.
 
 
 13
 The non-examining doctors may be excused for not considering Mrs. Davila's bilateral carpal tunnel syndrome, but the ALJ's failure to do so cannot be absolved. The ALJ certainly had the discretion to ignore Dr. Fontanez' ultimate conclusion of disability since the Secretary, not the doctor, is responsible for determining whether a claimant is disabled. 20 C.F.R. Sec. 404.1527. See Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir.1982). But the ALJ was not at liberty simply to ignore uncontroverted medical reports. Suarez v. Secretary of Health and Human Services, 740 F.2d 1 (1st Cir.1984). He saw the diagnosis of bilateral carpal tunnel syndrome but chose not to credit Dr. Fontanez' report because, according to his opinion, it was "not compatible with previous neurological and rheumatological findings of record." However, Dr. Fontanez' report was the latest in a series of medical reports which showed an increasingly complicated medical condition. His diagnosis of bilateral carpal tunnel syndrome not only was consistent with the other medical evidence in the record, but was supported by a report prepared two months earlier by Dr. Amadeo. The diagnosis, moreover, should not have surprised anyone familiar with Mrs. Davila's experience sewing wallets, since carpal tunnel syndrome is commonly caused by occupational activities which require "repeated flexion, pronation, and supination of the wrist, for example, sewing...." Harrison's Principles of Internal Medicine at 1467 (11th ed.).
 
 
 14
 Because Mrs. Davila's medical record indicated a deteriorating medical condition, the ALJ's exclusive reliance on the incomplete RFC evaluations fatally tainted his deliberations. The hypothetical question he posed, consistent with those evaluations, asked the vocational expert to assume that Mrs. Davila had limitations only in the use of her left arm. It thus failed to account for the distinct possibility that Mrs. Davila also was impaired in her ability to use both her left and right hands. The hypothetical question, based on imperfect assumptions, necessarily produced an imperfect response, which could not provide the requisite "substantial evidence" for the ALJ's consequent determination that Mrs. Davila was not disabled.[4] See O'Leary v. Schweiker, 710 F.2d 1334, 1343 (8th Cir.1983) (response to defective hypothetical question does not constitute substantial evidence).
 
 II
 
 15
 We note another flaw in the Secretary's analysis that should be taken into account on remand. According to the ALJ, Mrs. Davila qualified for disability benefits after December 18, 1987 because on that date she "had attained age 55 and, most important, developed a significant emotional component diagnosed as major depression single episode, unspecific. The claimant is described as markedly depressed, confused and in poor contact with reality. The judgement and insight were found nil (Exhibit 52). The claimant still had a residual functional capacity compatible with light exertion, but had turned older and most important can not cope with the mental demands of a competitive working environment" (emphases added).
 
 
 16
 We might agree that Mrs. Davila did not become disabled until December 18, 1987 if the finding of disability had been based solely on a mechanical application of the Medical-Vocational Guidelines to her new status as a person of "advanced age." See 20 C.F.R. Sec. 404.1569 and Rule 202.02, Table No. 2, Appendix 2, Part 404, Subpart P. But as we read the ALJ's opinion, his finding of disability was also, perhaps primarily, based on a changing psychological profile that made it impossible for Mrs. Davila to function in a work environment. The evidence on which the ALJ based his conclusion about Mrs. Davila's diminished mental capacity was a report prepared by Dr. Rivera Gonzalez, an examining psychiatrist, on July 6, 1987. If, as the ALJ says, Mrs. Davila's deteriorating mental condition caused her disability (a conclusion which we think is well supported by the record), it follows that the disability could not have begun any later than the date of Dr. Rivera Gonzalez' report.
 
 III
 
 17
 The judgment of the district court is vacated and the case is remanded with instructions to remand to the Secretary for further proceedings consistent with this opinion.
 
 
 
 [1]
 In May 1987--after the Secretary had rejected her application but before the district court's remand order--Mrs. Davila filed a second application for disability benefits. The second claim was identical to the first and was consolidated with it for purposes of a hearing and decision
 
 
 [2]
 Such assessment forms, which "indicate[ ] in lay terms in what manner claimant's ... physical problems might limit his ability to sit, stand, lift, bend or perform other basic work activities", Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d 4, 6 (1st Cir.1988), are necessary in cases like this because the raw medical data contained in charts, examination notes and doctors' reports are generally unintelligible to a lay fact finder such as an ALJ, who consequently is not qualified to translate the data into a categorical conclusion about the claimant's residual functional capacity. See Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d at 7; Rosado v. Secretary of Health and Human Services, 807 F.2d 292, 293 (1st Cir.1986); Berrios v. Secretary of Health and Human Services, 796 F.2d 574, 576 (1st Cir.1986); Lugo v. Secretary of Health and Human Services, 794 F.2d 14, 15 (1st Cir.1986)
 
 
 [3]
 According to the Social Security Administration's regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. Sec. 404.1567(b)
 
 
 [4]
 One of the questions posed on cross-examination, on the other hand, in which Mr. Davila's attorney asked the vocational expert to describe the jobs available to a person who could not hold any object heavier than a cane in her hands, came closer to an accurate description of the limitations that bilateral carpal tunnel syndrome might be expected to produce. In response to that question, the vocational expert stated his opinion that an individual with those limitations could not function in any work setting