959 F.2d 230
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Carmen M. Melendez SALGADO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 91-2230.
 United States Court of Appeals,
First Circuit.
 April 1, 1992
 
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Nancy B. Salafia, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 Before Torruella, Circuit Judge, Campbell, Senior Circuit Judge, and Selya, Circuit Judge.
 Per Curiam.
 
 
 1
 The appellant, Carmen Melendez Salgado, appeals from a decision of the Secretary of Health and Human Services denying her application for federal disability benefits. The Secretary's decision was based on a ruling by an administrative law judge (ALJ) that Mrs. Melendez had the residual functional capacity to return to her past work as a legal secretary. The district court affirmed the Secretary's decision, and this appeal followed. For the reasons stated in this opinion, we affirm the district court judgment.
 
 The Medical Evidence
 
 2
 Mrs. Melendez claims that she has been disabled since late 1982 by upper back pain that radiates to and affects her neck and left shoulder, and by diabetes.[1] The medical evidence of record shows that Mrs. Melendez has been treated for diabetes by drug therapy and diet modification for some twenty years, and that, although at least one doctor has described the condition as "uncontrollable," she did not suffer during the period of her insured status from a significant impairment of vision or from any of the impairments of the nervous or vascular systems that are sometimes associated with diabetes.
 
 
 3
 Mrs. Melendez has complained of back and neck pain since at least 1982. X-rays, however, have never revealed a spinal defect except for "minimal levoscoliosis," and the condition has been diagnosed as myositis (muscle inflammation) and muscle spasm, but never as one involving nerve damage. Range of motion tests have consistently showed no limitation of movement in her neck and shoulder, but have on occasion detected some limitations of movement in the trunk.
 
 
 4
 At the hearing before the ALJ, Mrs. Melendez also complained of pain and numbness in her hands, and asserted that she had received "injections" for the problem. The medical records do not report this treatment, and though the evidence does reflect her complaints of numbness, it does not suggest whether the discomfort in Mrs. Melendez' hands is related to either her back and neck problems or her diabetes.
 
 The ALJ's Decision
 
 5
 The ALJ denied Mrs. Melendez benefits at the fourth step of the "sequential analysis" created by the Secretary's regulations. 20 C.F.R. § 404.1520. That is, the ALJ decided (1) that Mrs. Melendez was not working, (2) that she suffered from a "severe" impairment, (3) that the impairment did not, however, "meet or equal" in its severity one of the impairments listed in Appendix 1 of Part 404 of the regulations, and (4) that, notwithstanding her impairment, she had the residual functional capacity to perform her "past relevant work" as a legal secretary. 20 C.F.R. § 404.1520(e).
 
 
 6
 The ALJ made three findings concerning his decision at step four, as he was required to do by Social Security Ruling (SSR) 82-62. First, he concluded that "there are no objective findings in file to establish that [Mrs. Melendez] is not able to function in sedentary and light activities." Second, he found that Mrs. Melendez' past relevant work as a legal secretary involved mostly sedentary, but occasionally light, work activities. See 20 C.F.R. § 404.1545(a) and (b) (defining sedentary and light work, respectively). These activities included typing and taking dictation, running errands, answering the telephone, "and so forth." Finally, the ALJ found that Mrs. Melendez' residual functional capacity was sufficient to allow her to return to such work.
 
 The Issue on Appeal
 
 7
 Mrs. Melendez contends on appeal that the ALJ incorrectly decided that she had the residual functional capacity to meet the demands of her former job. We review such a challenge in light of (1) the disability claimant's burden of proof at step four, Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982), and (2) the standard of "substantial evidence" that governs the Secretary's disability determinations. Richardson v. Perales, 402, U.S. 389, 410 (1971). This means that we will review here only to determine whether a "reasonable mind" could have concluded on the evidence before the ALJ that Mrs. Melendez had failed to prove an inability to return to her past relevant work.
 
 
 8
 Our application of this standard compels us to affirm. First, the ALJ's characterization of Mrs. Melendez' past work as being mostly sedentary, and requiring no more than transient interludes of "light" activity, accords with Mrs. Melendez' own description of her job requirements. Although Mrs. Melendez described her job as a legal secretary in only general (and occasionally inconsistent)[2] terms, we glean from her testimony and the evidence she submitted that the job required her to sit most of the time and to stand or walk only occasionally, and that it involved "a lot" of writing and some typing, but little bending and no more than occasional lifting and carrying of relatively light objects.
 
 
 9
 The ALJ's finding that Mrs. Melendez had the residual functional capacity to do sedentary and some light work is slightly more problematic, though we ultimately conclude that it was supported by substantial evidence. It is true that we usually disqualify the ALJ, as a lay factfinder without medical expertise, from translating "raw medical data" into an assessment of a claimant's residual functional capacity. Rather, we usually require the ALJ to enlist the services of a doctor to make the translation in the form of an "RFC questionnaire." See, e.g., Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d 4, 7 (1st Cir. 1988) (per curiam).
 
 
 10
 The ALJ here did not take that step. However, we can excuse his failure to do so for two reasons. First, the impairments reflected in the record, though numerous, appear to have been "relatively mild" in the sense that the reports show few symptoms that would affect ability to do work. See Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 4-5 (1st Cir. 1991) (per curiam). Second, and more important, we do not read Mrs. Melendez' appellate brief to challenge the ALJ's categorization of her residual functional capacity. Rather, we understand Mrs. Melendez to complain that the ALJ, though perhaps correct about her ability to do sedentary and some light work as a general proposition, nevertheless failed to take into account specific physical limitations that rendered her unable to meet the demands of her past work.
 
 
 11
 Mrs. Melendez' argument in this regard focuses on (1) her description of her past secretarial job as requiring her to do some typing and "a lot" of handwriting, and (2) her allegations of "severe problems" with her "upper extremities," and pain and numbness in her hands. The ALJ, she argues, should not have "summarily dismissed" such evidence.
 
 
 12
 We see Mrs. Melendez' point, and think that the better practice for the ALJ might have been to enlist expert assistance to resolve the issue. But the record does not permit us to conclude that the ALJ lacked substantial evidence for the finding, implicit in his ultimate determination of no disability, that Mrs. Melendez had failed to prove that her problems with her arms and hands prevented her from meeting the typing and writing requirements of her past work. The medical evidence contained only sporadic reports that Mrs. Melendez complained of numbness in her hands. As to the allegations of "severe" problems with her upper extremities, the record shows that numerous tests failed to detect any significant restriction in range of motion or arm strength. The record also contains a three-page, single-spaced holographic letter written by Mrs. Melendez in November 1986. The handwriting in the letter is clear and legible, and is evidence that Mrs. Melendez could do at least some handwriting during the period of her alleged disability.
 
 
 13
 Thus, although the record might not have led us to the same conclusion as it did the ALJ, the evidence was sufficient to allow a "reasonable mind" to accept the ALJ's conclusion, and we therefore have no reason to disturb the Secretary's decision.
 
 
 14
 The judgment is affirmed.
 
 
 
 [1]
 The record also shows that Mrs. Melendez has complained of or been diagnosed as suffering from menstrual problems, chest pains, hypertension, headaches and dizzy spells, insomnia and an anxiety disorder judged not to be "severe" by the Secretary's medical consultants. Mrs. Melendez has not attempted to link any of these ailments or their symptoms to her alleged inability to perform her past work
 
 
 [2]
 For example, in the first Disability Report Mrs. Melendez submitted to the Secretary, she alleged that her former job required "constant" bending and "frequent" reaching. In the second Disability Report she submitted, she claimed that the job required only "occasional" bending and reaching. The third Disability Report said that the need for bending "depend[ed] on the work duty," and left unanswered a question about reaching. There were similar inconsistencies among the three Disability Reports with respect to the amount of walking, standing, lifting and carrying required by the job