USCA1 Opinion

 

 February 3, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1829 ANA GIMENEZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Cyr, Circuit Judges. ______________ ____________________ Salvador Medina De La Cruz on brief for appellant. __________________________ Daniel F. Lopez Romo, United States Attorney, Jose Vazquez _______________________ _____________ Garcia, Assistant United States Attorney, and Jan B. Brown, Assistant ______ ____________ Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant, Ana M. Gimenez, appeals from __________ a district court judgment affirming the decision of the Secretary of Health and Human Services that she is not entitled to Social Security disability benefits. We affirm. I. _ Claimant applied for disability benefits on November 7, 1989. She claimed an onset date of December 31, 1988; her insured status expired on December 31, 1992. At the time she filed her application, she was fifty years old. Claimant's alleged impairments included herniated discs, left hand injury, migraine headaches, osteoporosis, pinched nerves and cardiac arrythmia. Her claim was denied initially and upon reconsideration. An administrative law judge (ALJ) held a hearing and determined that claimant could perform her past work. The Appeals Council denied claimant's request for review. Thus, the ALJ's decision became the final decision of the Secretary. From her testimony at the hearing and the disability report completed by claimant, the following evidence emerges. Claimant worked for the same company for nineteen years until it closed in December 1988. While she was there she held several positions. She began working as an accounting clerk. In this position, she took care of the accounts receivable books and did filing. Her next position as a productions clerk involved keeping handwritten production reports and assisting with taking inventory. She then became an inventory control clerk and worked solely on keeping track of inventory. These positions generally required her to be seated fifty percent of the time. Claimant's last position was as a receptionist. At this job, she sat all of the time. She stated that she used both of her hands for tasks such as operating a calculator and working the switchboard. Claimant sustained a back injury in 1980 and asserted that due to back and hip pain, she could not remain in one position too long; she often had missed work due to this pain. After her job ended in December 1988, she tried working as a drug store clerk. This job lasted one week because claimant could not stand. Claimant also alleged pain in her left big toe, left leg and right knee. She stated that due to left foot spurs the foot would swell so much that she could not stand. Claimant receives injections for the pain in her knees. She also takes other medication for the pain but is limited in the amount she can use due to her cardiac problems. This medication gives her "some relief" from the pain. As for her headaches, claimant testified that, at the time of the hearing, she had been suffering from migraines on a daily basis for the past six years. During a migraine attack, she is unable to concentrate, read or think and cannot tolerate light. The medication she takes, however, alleviates the symptoms. -3- Claimant stated that she also suffered from pain in her left shoulder, arm, hand and fingers. She averred that the nerves in her fingers are pinched and that, as a result, she cannot perform any tasks with her left hand (claimant is left-handed). Specifically, her left hand becomes swollen, cramped and numb; she cannot uncurl her fingers to open her hand all the way. She testified that her right hand was beginning to develop similar symptoms. Claimant shares a duplex with relatives. She is able to take care of her personal needs. Her mother and sister help with the cooking. She sweeps and mops about once or twice a month, washes dishes, irons and takes out the trash. Her mother does all the laundry because of claimant's problems with her hands. Claimant goes to church when she can, drives an automobile and does her household shopping with help from relatives. However, she cannot do heavy household cleaning chores and yard work. She reads, watches television and receives visitors two to three times a month. She spends a lot of time in a prone position due to her headaches. The ALJ determined that claimant suffered from a combination of impairments including degenerative joint disease, essential hypertension, left trapezius myositis, mild right and left carpal tunnel syndrome and a painful left foot hallux valgus (angulation of great toe). He noted that -4- one physician had reported that claimant suffered from an anxiety disorder but that claimant never had received treatment for it. Thus, he determined, this mental condition did not reduce, in any significant way, her capacity for the performance of basic work activities. He credited claimant's subjective complaints of disabling pain only to the extent that her residual functional capacity was limited to the full range of light exertion. He then concluded that claimant could perform her past work. II. __ A claimant for Social Security disability benefits bears the initial burden of establishing that he or she cannot perform past relevant work. Goodermote v. Secretary __________ _________ of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982). ____________________________ This burden includes proving that a claimant is prevented from returning to his or her type of work generally, not _________ solely to the particular job. See Dudley v. Secretary of ___ ______ _____________ Health and Human Services, 816 F.2d 792, 795 (1st Cir. 1987) __________________________ (per curiam); Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. ____ _______ 1985) (per curiam). Our standard of review under the Social Security Act is whether the Secretary's determination is supported by "substantial evidence." 42 U.S.C. 405(g). Although the record may support more than one conclusion, we will uphold the Secretary if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as -5- adequate to support his conclusion." Rodriguez v. Secretary _________ _________ of Health and Human Services, 647 F.2d 218, 222 (1st Cir. _____________________________ 1981). The resolution of conflicts in the evidence is for the Secretary, not the courts. Id. ___ On appeal claimant presents essentially three arguments: (1) the severity of her carpal tunnel syndrome prevented her from performing the full range of both light and sedentary work; (2) due to her back and foot conditions, she could not sit or stand for sufficient periods of time to engage in any work; and (3) the ALJ did not properly credit her allegations of pain. Before turning to the merits of these claims, we note that this is an especially sparse record. Claimant's evidence consists of three very brief progress notes from the State Insurance Fund, four cursory responses to Social Security disability determination questionnaires prepared by claimant's treating physicians and two radiology reports. In addition, the Secretary submitted the record to two non-examining doctors who completed residual functional capacity (RFC) forms and had claimant examined by a consultative rheumatologist. We will discuss this evidence in light of claimant's issues on appeal. 1. Claimant argues, that, based upon her testimony, the carpal tunnel syndrome is so severe that it amounts to a serious nonexertional impairment. She refers to Social Security Ruling (SSR) 83-14, entitled Capability to do -6- Other Work -- the Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments. Although not directly on point, this ruling states that sedentary work requires good use of the fingers and hands. Given this, claimant concludes, the ALJ was required to secure the testimony of a vocational expert to assess the extent to which her carpal tunnel syndrome eroded the occupational base for light and sedentary work.1 Id. ___ We do not believe that the ALJ erred in not securing such testimony. In claimant's medical evidence, there is only one reference to any impairment involving her hands. In an arthritis medical questionnaire, Dr. Victor M. Gonzalez states that claimant has swelling of the joints of her left hand and that the fourth finger of her left hand is a "trigger finger." He provided no further explanation despite the specific request for "a detailed description of ____________________ 1. Claimant also relies on SSR 85-15, which concerns the use of the Medical-Vocational Guidelines for solely nonexertional limitations, for the argument that for unskilled, sedentary _________ work, claimant must be able to use her hands for fine manipulations such as picking, pinching, grasping, holding and turning. We only note that the ALJ described claimant's past work as semi-skilled in nature, a finding she does not ____________ dispute. In any event, the two RFC forms stated that claimant had no limits in performing fine manipulations. Similarly, Sec. 201.00(h) of Pt. 404, Subpt. P, App. 2 (the Medical-Vocational Guidelines) which states that an injury resulting in the inability to perform jobs requiring bilateral manual dexterity would support a finding of disabled is inapposite. Subsection (h) is an example concerning an individual under 45 years of age who is restricted to unskilled sedentary work. _________ -7- the affected major joints in terms of . . . loss of strength of hand function (grasp, grip, pinch)." Nor did Dr. Gonzalez complete the range of motion chart or the periods of exacerbation table as requested. Finally, Dr. Gonzalez did not list carpal tunnel syndrome under the heading ___ "diagnosis". Indeed, the only physician to so diagnose claimant's problems with her hands was Dr. Luis Olivari, the doctor to whom the Secretary referred claimant for a consultative examination. He noted that claimant had a weak left hand grip and related the weakness to carpal tunnel syndrome. However, he noted that her hand condition "might improve with adequate treatment." The Social Security regulations require claimant to submit medical reports which include "[a] statement about what you can still do despite your impairment(s). . . . " 20 C.F.R. 404.1513(b)(6). This statement must refer to a claimant's ability to handle objects. Id. 404.1513(c)(1). ___ Further, the medical evidence should be complete enough to enable the Secretary to determine a claimant's "residual functional capacity to do work-related . . . activities." Id. 404.1513(d)(3). None of the medical evidence submitted ___ by claimant contains this information. In the absence of any such evidence, the ALJ was entitled to rely on the RFC forms which both indicated that -8- claimant had no limitation in using her fingers for fine manipulation. The only limit noted in both forms was in using the hands for gross manipulations. Further, the examining physician found normal wrist motion and, besides the left hand weakness, did not mention any other manipulative difficulties that would indicate that claimant did not retain the "good use of the hands and fingers" required for most sedentary work. See SSR 83-14. Although ___ we have pointed out in the past, and now point out again, that the Secretary should have the examining consultant complete an RFC evaluation, see Rivera-Torres v. Secretary of ___ _____________ ____________ Health and Human Services, 837 F.2d 4, 6 (1st Cir. 1988) (per _________________________ curiam), we find that there was sufficient evidence in the record to support the ALJ's conclusion.2 2. Claimant argues that two C.T. scans -- one in July 1990 and one in October 1990 -- establish her inability to work due to her back and foot conditions. The July 1990 C.T. scan showed a narrowing of the disc spaces at L4-L5 and L5-S1; the disc at L5-S1 was bulging. In addition, the scan showed mild osteoarthritis changes of the L5-S1 and right L4- L5 facet joints. The October 1990 C.T. scan report stated that claimant suffered from severe degenerative joint disease ____________________ 2. We also note in this context that there is no evidence that claimant ever sought treatment for the problems with her hands, another basis for upholding the ALJ's decision. See ___ Tsarelka v. Secretary of Health and Human Services, 842 F.2d ________ ______________________________________ 529, 534 (1st Cir. 1988) (per curiam). -9- in her left great toe with spur formation and sclerotic changes. Claimant points out that the nonexamining physicians who completed the RFC assessments and the consultant who examined claimant in December 1989 did not have the benefit of these "objective" medical data. As a result, she argues, a medical advisor was required to interpret them because the ALJ, a lay person, may not translate such data into functional terms. See Berrios v. ___ _______ Secretary of Health and Human Services, 796 F.2d 574, 576 _________________________________________ (1st Cir. 1986) (per curiam). We reject this argument. First, one of the nonexamining physicians completed his RFC assessment on May 21, 1990. At this time, the medical questionnaire, completed by Dr. Irizarry on May 8, 1990, was in the file. In answering this questionnaire, Dr. Irizarry refers to a C.T. scan of March 9, 19903 which showed essentially the same condition as the July scan -- degenerative disc disease at L4-L5-S1, osteoarthritis of the posterior facet joints and a narrowing of the spinal canal at L5-S1. Also on file at this time was an earlier questionnaire completed by Dr. Irizarry in November 1989. Although mostly illegible, it appears that claimant's diagnoses at this time were cervical osteoarthritis and cervical fibromyositis. ____________________ 3. Claimant failed to include a copy of the report of the March 1990 C.T. scan in the record. -10- Second, both nonexamining physicians had the report of Dr. Olivari, the Secretary's consultant. Although, as claimant points out, Dr. Olivari's examination occurred seven months prior to the July 1990 C.T. scan, it nonetheless could serve as a basis for the RFC assessments. First, it appears from the State Insurance Fund (SIF) progress notes that claimant's present back condition is related to an injury she sustained in 1980. Second, claimant alleged that she had to ____ stop work in 1988 due to her back condition. As there is no indication that claimant's symptoms worsened between 1988 and July 1990 when the C.T. scan was performed, Dr. Olivari's observations in 1989 are pertinent. This examination of claimant revealed full range of motion of claimant's spine. There was mild difficulty in kneeling and some left trapezius spasm. However, there were no motor or sensory deficits and no inflammation of the major joints; all deep reflexes were normal. Dr. Olivari diagnosed degenerative joint disease (which the C.T. scan confirmed) and painful left foot hallux valgus. This is more than sufficient evidence on which to base an RFC assessment.4 Turning to these assessments, both ____________________ 4. Claimant argues that the physician who completed the RFC assessment dated May 21, 1990, did not give a reasonable explanation as to how he reached his conclusions. A review of the RFC form belies this contention. Concerning her exertional limitations, the physician indicates that he relied on the following evidence: (1) complaints of cervical and lumbar pain; (2) morning stiffness; (3) the March C.T. -11- physicians determined that claimant could frequently lift and carry weights up to twenty-five pounds and occasionally could lift and carry objects weighing up to fifty pounds. Claimant could sit, stand and walk up to six hours per activity. She could occasionally stoop, kneel, crouch, balance and crawl. Her ability to push and pull was unlimited up to the weights for lifting and carrying. In this context, we note that Dr. Irizarry also neglected to complete the range of motion charts and the periods of exacerbation tables. This information is directly related to residual functional capacity and it is claimant's burden at step four of the sequential evaluation process to produce such evidence. See Goodermote, 690 F.2d at 7; see ___ __________ ___ also 20 C.F.R. 404.1513. Although there is a conflict ____ between the RFC assessments and claimant's testimony as to her limits, such conflicts are for the Secretary. See ___ Rodriguez, 647 F.2d at 222. We therefore cannot fault the _________ determination that claimant could perform the full range of light and sedentary work. 3. "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of ______ ____________ Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989) __________________________ ____________________ scan which revealed degenerative disc disease at L4-L5-S1; (4) vertebral muscle spasm; and (5) vertigo. -12- (per curiam). In reviewing such complaints, the ALJ's credibility determination is entitled to deference where there are specific findings to support it. See Frustaglia, ___ __________ 829 F.2d at 195. Here, the RFC assessments of the two nonexamining physicians who reviewed the record both indicated that claimant's conditions did not prevent her from engaging in sedentary or light work. This conclusion is supported by Dr. Olivari's report indicating full range of motion of claimant's head, shoulders, wrists, hips and spine. Although the results of the C.T. scans reflect the kind of conditions that can be expected to produce pain, claimant's own description of her daily activities, in addition to the medical findings referred to above, do not support the conclusion that her pain was as severe as alleged. Claimant stated that she cleans her home regularly, attends to her personal needs and drives a car. She takes medication that alleviates her symptoms; one of her treating physicians noted mild improvement and a 1988 progress note from the S.I.F. indicates that claimant had no complaints. Based on the foregoing, we agree with the ALJ's decision not to credit claimant's allegations of totally disabling pain. Affirmed. ________ -13-