**Ramona RIVERA–FIGUEROA,**
**Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,**
**Appellee.**

**No. 88–1461.**

United States Court of Appeals,
First Circuit.

Submitted Sept. 16, 1988.

Decided Oct. 7, 1988.

---

William Dominguez Torres, Rio Piedras, P.R., and Juan A. Hernandez Rivera, Bayamon, P.R., on brief for plaintiff, appellant.

Tami T. Martin, Office of Gen. Counsel, Social Sec. Div., Dept. of Health and Human Services, Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., Jose Blanco, Asst. U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief for defendant, appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

Claimant sought disability benefits on the basis of vertigo and a mental impairment. The Secretary concluded claimant could not return to her past medium exertional level work as a cook's helper because of dizziness but could perform "a full range of medium work." Applying grid rules 203.11 (advanced age, limited education, unskilled past work, RFC for medium work) and 203.12 (advanced age, limited educational, past semi-skilled work-skills not transferable, RFC for medium work) which direct a finding of not disabled, the Secretary denied benefits.

Claimant was born on July 3, 1929. She was educated up to first year high school. She worked for many years as a cook's helper, a job which required her to stand or walk eight hours per day and lift up to 50 pounds. The vocational expert at the first hearing classified this job as unskilled, while the VE at the second hearing said it was "semi-skilled, low level, which means that the skills of that type of job do not give [claimant] any advantage over those people who have performed unskilled work all their life." In 1974, claimant was injured at work when some boxes fell on her head. She received a 75% disability rating from the State Insurance Fund (SIF) with diagnoses of depressive neurosis class III (moderate severe) and trauma to left ear. She filed for disability in 1983, claiming to have been totally disabled since November 8, 1979.

On June 30, 1984 when claimant last met the insured status requirement, claimant was 54, a person closely approaching advanced age as defined in 20 C.F.R. § 404.1563(c). Indeed, within a few days she turned 55, which is classified as advanced age. If claimant were functionally restricted to light work (instead of medium as the Secretary found) and if her past cook's helper job were unskilled (as the first VE testified), then the relevant grid rule would be rule 202.09 (closely approaching advanced age, illiterate in English, unskilled past work), which would have directed a finding of *disabled.* If, instead, claimant had been four days older when insured status expired and she were limited to light work, then grid rule 202.02 (advanced age, limited education, skilled or semi-skilled past work-skills not transferable) would direct a finding of disabled even if the cook's helper job qualified as semi-skilled work. If claimant were functionally restricted to sedentary work, grid rule 201.10 (closely approaching advanced age, limited education, skilled or semi-skilled past work-skills not transferable) also would have directed a finding of disabled. And, of course, if claimant has a significant mental impairment or some other nonexertional impairment, the grid could not be used to direct a finding of not disabled. *Burgos Lopez v. Secretary,* 747 F.2d 37, 41–42 (1st Cir.1984) (error to apply grid where claimant had a nonexertional mental impairment). We highlight these rules to illustrate the borderline situation presented.

We turn to the evidence. Claimant testified she has pains in her back, hands, head, and legs, her hands swell, and she experiences dizzy spells during which she loses

consciousness and falls down. She was seeing Dr. Gonzalez Pimental monthly and taking the medications he prescribed. She did not visit people, but got along with family and neighbors.

State Insurance Fund records indicated as follows. Following her work accident, claimant developed an emotional condition, diagnosed in January 1979 as depressive neurosis with features of anxiety. She began treatment in March 1979 with Dr. Gonzalez Pimental. At that time, claimant complained of irritability, headaches, nervousness. She was logical, coherent, and realistic. Hygiene was fair. Affect was appropriate. Intellectual capacity, judgment, and insight were impaired. Chronic invalidism was noted. In April 1979, Dr. Gonzalez Pimental recommended continued psychotherapy. In February 1980, claimant was referred to Dr. Hoyos to determine the need for additional treatment. Claimant at that time reported arthritis, stomach pain, headaches, swollen legs, chest pain, and inability to go out alone. She said she spent her day sitting, did not watch television because the noise bothered her, did not do household chores, got along well with everyone, and was able to care for her personal needs. Dr. Hoyos found her to be alert, cooperative, logical, coherent, but somewhat anxious and depressed. Claimant spoke a lot. Memory was conserved, thought organized, and concentration and judgment fair. Claimant was not oriented in time. Dr. Hoyos diagnosed anxiety neurosis moderate to severe. He recommended further psychiatric treatment. As a result, five more treatment sessions with Dr. Gonzalez Pimental were authorized. In his June 15, 1981 report at the conclusion of these sessions, Dr. Gonzalez Pimental said claimant at the first session had appeared tranquil and had been logical, realistic, relevant, coherent, oriented, and somewhat verbose. Judgment and insight were adequate. Mood was depressed. As the sessions progressed, claimant showed a tendency toward marked invalidism and insecurity. She complained much of insomnia, headaches, shortness of breath, and anxiety. She claimed to see shadows and hear voices. She started to isolate, seemed to deepen in her depression, and frequently mentioned suicide as a solution. Dr. Gonzalez Pimental noted claimant had "little motivation and interest to rehabilitate herself and overcome her conflicts." He felt claimant had improved very little during the treatment and had "few resources to function adequately at present." He diagnosed depressive neurosis moderate severe and prescribed vistaril and limbitrol. Neither Dr. Gonzalez Pimental nor any other SIF doctor described in lay terms how, employment wise, claimant was restricted or what types of jobs she could handle despite her mental condition.

From June 15, 1981, the date of Dr. Gonzalez Pimental's final report, until November 1983, when three doctors responded to questionnaires sent by the Secretary, there are no contemporaneous medical records. Dr. Vazquez, the first questionnaire respondent, indicated that he had first seen claimant in May 1976 at which time claimant had a urinary tract infection and shoulder pain. Since 1978, he said, claimant had been limited by bursitis, urinary tract infections, and generalized complaints of joint pain. Dizzy spells, spastic reflexes, diminished pulse, edema, and severe tension headaches were noted. He said claimant had an emotional disorder secondary to long term arthritis. She had been treated with tranquilizers, anti-depressants, analgesics, and anti-inflammatory drugs. Claimant's last visit had been on August 8, 1983. How often Dr. Vazquez had treated claimant or how he felt she was restricted functionally were not indicated.

Dr. Cabrera, the second respondent, indicated she had seen claimant on three occasions in 1981 and then again on November 19, 1983. She noted no dizzy spells, but inflammation of wrists and knees, edema, severely limited cervical motion, and thoraco-lumbar scoliosis. Claimant was described as slow of speech, forgetful, disoriented at times, and very anxious and depressed. Dr. Cabrera diagnosed severe cervical and lumbar spasm, migraine, severe anxiety neurosis with severe depression, and arthritis. She wrote that claim-

ant's prognosis was "very poor" and that claimant was totally and permanently disabled.

The third doctor to complete a questionnaire in November 1983 was Dr. Gonzalez Pimental, who had first treated claimant in 1979 through the SIF. He had last seen claimant on November 7, 1983. Claimant had been anxious, talkative, mostly logical, and coherent. Content of thought showed tendency toward invalidism and occasional delusions. Immediate and recent memory were impaired and remote memory was spotty. Intellectual capacities for calculation, abstraction, and comprehension were "affected." Judgment, insight, capacity to care for basic needs, rapport with friends, and ability to interact with strangers were all fair. Dr. Gonzalez Pimental had treated claimant with desyrel, xanax, and halcion. Dysthymic disorder was diagnosed. Prognosis was guarded to poor. Dr. Gonzalez Pimental wrote that claimant had been unable to work since January 1979. Whether this was his opinion or a statement of claimant's history is not entirely clear. Dr. Gonzalez Pimental updated his report in April 1984. Rapport with friends had gradually become impaired, ability to interact with strangers was now poor, and claimant had great difficulty handling family situations.

On December 7, 1983, a few weeks after Dr. Gonzalez Pimental's report, Dr. Pinero Rivera evaluated claimant. Claimant complained of anxiety, insomnia, headaches, and pain in the lower extremities. Her daily activities were nil. Affect was appropriate and adequate, mood was neither depressed nor elated, attention span and concentration span were intact, memory was preserved, and claimant was oriented. Atypical anxiety disorder with conversion features was diagnosed. Dr. Pinero did not complete an RFC or expressly state whether, from an emotional standpoint, he felt claimant had any restrictions on ability to interact and work.

The next day claimant was evaluated by Dr. Marrero Bonilla, an orthopedic sur-geon. Claimant reported pain in the neck, wrist, hand, and lower back. Mild nodules were noted in the fingers. Range of motion was good except that lumbar flexion was limited to 70 degrees (out of 90 degrees), lumbar lateral flexion to 15 degrees (out of 20 degrees), and cervical motions were also somewhat restricted. Dr. Marrero concluded as follows: "This patient suffers fibromyositis [1] with no joint effusion. She also suffers of psychiatric condition that needs to be evaluated by psychiatrist for competence to work." Dr. Marrero did not complete an RFC rating claimant's ability to sit, stand, lift, or do other basic work activities.

In an April 1984 update, Dr. Vazquez classified claimant's arthritis as severe, and in August 1984 Dr. Vazquez wrote that since May claimant had had several episodes of vascultitis, fever, and rupture of small capillaries in both legs. In November 1984, he said claimant had had frequent checkups, frequent secondary infections and colds, and was unable to work.

There are further medical reports, but they postdate the expiration of insured status and do not purport to describe claimant's pre-June 1984 condition, so we will not discuss them.

Missing from the medical evidence is any residual functional capacity assessment performed by a treating physician. There are several forms completed by nonexamining psychiatrists asserting that claimant's mental condition is not severe, but as these naked opinions predate the Secretary's ruling restricting the nonsevere label to truly *de minimis* conditions, *see McDonald v. Secretary*, 795 F.2d 1118, 1124–25 (1st Cir.1986), and do not indicate the basis of the opinion or whether the severity regulation was being properly applied, they are not useful. *Rivera–Torres v. Secretary*, 837 F.2d 4, 6 (1st Cir.1988) (conclusory statement that impairment not severe not helpful where it is not apparent whether nonexamining doctor properly limited nonsevere label to *de minimis* conditions);

---

**1.** Fibromyositis is a "chronic inflammation of a muscle associated with an overgrowth of connective tissue." 2 J.E. Schmidt, Attorneys' Dictionary of Medicine F–55 (1988).

**52**

*Fernandez v. Secretary,* 826 F.2d 164, 167 (1st Cir.1987).

As the case stands, the ALJ appears to have interpreted the medical data himself to conclude that, despite the reports of bursitis, arthritis, and fibromyositis, claimant nevertheless had the physical capacity to perform a full range of medium work, that is, she could lift up to 50 pounds, frequently lift or carry up to 25 pounds, and be on her feet most of the work day. Especially here where the grid might well direct a finding of disabled were claimant able to perform only light work, we question the ALJ's ability to assess claimant's physical capacity unaided even by an RFC assessment from a nonexamining doctor. *See Rivera–Torres v. Secretary,* 837 F.2d 4, 7 (1st Cir.1988); *Berrios v. Secretary,* 796 F.2d 574, 576 (1st Cir.1986) (lay fact finders not competent to interpret and apply raw medical data). Furthermore, the ALJ's opinion appears internally inconsistent. The ALJ concluded that in view of claimant's dizziness, she could not perform her past work as a cook's helper "because it would be very difficult for her to be cooking or serving and experience dizziness." The ALJ then applied grid rules which are based on an ability to perform a full range of medium work. Why the dizziness which precludes being a cook's helper would not be a significant impediment to much other medium level work was not explained.

Moreover, we think reliance on the grid was precluded in view of claimant's history of treatment for a significant mental disorder. Absent a residual functional capacity assessment from an examining psychiatrist, we do not think the ALJ was equipped to conclude that claimant's condition was so trivial as to impose no significant limitation on ability to work. *Burgos Lopez v. Secretary,* 747 F.2d 37, 41–42 (1st Cir.1984).

In short, we do not find substantial evidence to support the Secretary's conclusion

that claimant can do a full range of medium work. If claimant is limited to light work, then it must be determined whether claimant's past relevant work as a cook's helper was unskilled or semi-skilled. If it was unskilled, then grid rule 202.09 would appear to direct a finding of disabled.[2]

The judgment of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings consistent with this opinion.

---

**2.** It is true that a vocational expert described a number of light, unskilled jobs not requiring frequent contact with others, and the ALJ mentioned in his opinion that claimant could do these jobs. But if that is so, we think that, at a minimum, the ALJ must explain on what basis he reached a conclusion apparently at odds with grid rule 202.09. *See Vazquez v. Secretary,* 683 F.2d 1, 4–5 (1st Cir.1982).