**Jose GONZALEZ, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. 87–1588 (JAF).**

United States District Court, D. Puerto Rico.

Jan. 24, 1991.

Jose F. Vazquez, Colon & Associates, Cidra, P.R., for plaintiff.

Jose Vazquez–Garcia, Asst. U.S. Atty., Daniel F. Lopez–Romo, U.S. Atty., San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action under section 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. section 405(g), to review a final decision of the Secretary of Health and Human Services (the "Secretary") denying disability benefits. We review a Decision of the Appeals Council dated February 16, 1990, in which the Council adopted the findings and conclusions of a March 29, 1989 decision rendered by José R. Gautier, Administrative Law Judge. Plaintiff/claimant argues that the Secretary, on remand, failed to comply with this court's remand order. We disagree. We find that the Secretary's decision is based on substantial evidence and AFFIRM the Secretary's decision.

### Prior Proceedings

Plaintiff filed an application for disability benefits on June 14, 1984. Plaintiff was "insured" (and therefore eligible for benefits if found disabled) from January 1, 1982 through June 30, 1984 ("insured period"). Initially, on April 1, 1985, plaintiff's application was denied by an Administrative Law Judge determination following a hear-

ing. However, by Order of the Appeals Council dated September 30, 1985, the matter was remanded for consideration under the newly revised mental impairment Benefits Reform Act of 1984. The matter was reviewed, and on March 31, 1987, a hearing decision was rendered in which plaintiff was found not to be disabled during the relevant period.

The matter came before us on plaintiff's petition requesting review of the Secretary's then final decision. By Remand Order dated November 7, 1988, we remanded the matter to the Secretary for reevaluation. 715 F.Supp. 412. A new hearing was held, and on March 29, 1989 Administrative Law Judge Gautier issued a decision denying benefits. The March 29th decision was adopted by the Appeals Council on February 16, 1990. We are asked to determine whether the Secretary's decision following the remand is supported by substantial evidence. *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520 (1st Cir.1989), (similar fact pattern, substantial evidence found).

Petitioner González was born on February 8, 1946, and resides in Cidra, Puerto Rico. His claim for disability during the relevant period is based on complaints of a serious back injury, psychiatric disorders, and accompanying pain. In the March 31, 1987 decision (the decision prompting our remand), the ALJ applied the five-step test to determine disability. *Bowen, supra; Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5 (1st Cir.1982), 20 C.F.R. § 404.1520.

We review familiar history. As set out in *Bowen,* the Secretary must first determine whether the claimant is employed (Step One). If so, the claim is denied. If not, the Secretary must determine if a "severe" impairment exits, meaning one "which significantly limits his or her physical or mental capacity to perform basic work-related functions" (Step Two). If not, the claim is denied. If so, the impairment is compared to a list of impairments which appear in the regulations. If the impair-

ment appears on the list, or if the impairment is equivalent to one which appears on the list, the claimant is automatically entitled to a finding of disability (Step Three).

If the claimant is impaired, but not with an impairment found on the automatic disability list, the Secretary must determine whether the impairment prevents the claimant from performing work he or she has performed in the past (Step Four). If not, the claimant is not disabled.

If so, the Secretary must ask whether the impairment prevents the claimant from performing other work of the sort found in the economy (Step Five). The first four steps must be proven by the claimant. The burden of proof at step five shifts to the Secretary. Steps Four and Five are based on an inquiry into a claimant's Residual Functional Capacity, that ability to perform work which remains even after the limiting effect of impairments is taken into account.

In the 1987 decision, as to Step One the ALJ found that Mr. González was not employed during the subject period. Second, the ALJ found that Mr. González had a severe impairment, namely L5–S1 old root lesion, possible herniated disc, back pain, and dysthymic disorder. (Dysthymia is a specific affective disorder characterized by "chronic disturbance of mood or loss of interest or pleasure in all or almost all, usual activities)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 220 (3rd ed. 1980).

As to Step Three, the ALJ found that none of the impairments, separately or in combination, were listed in, or medically equivalent to the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1, thereby precluding a finding of automatic disability. As to Step Four, the ALJ found that the claimant could not perform his past work as a construction worker or an agricultural laborer. As to Step Five, the ALJ found that the claimant had an exertional capacity for moderate work, but that his non-exertional limitations prevented him from performing the full range of moderate work. *Burgos Lopez v. Secretary of Health and Human Services,* 747 F.2d 37 (1st Cir.1984), (discussion of non-exertional

limitations and effect on disability determination). Moderate work is defined as the ability to lift fifty pounds occasionally and twenty-five pounds frequently, to stand/walk for up to six hours and to sit for six hours in the course of an eight-hour work day. The ALJ based his RFC finding, at least in part, on the evaluation of two doctors who were used as Disability Determination Unit consultants. Dr. Anduze filed an RFC assessment dated July 30, 1984 (Tr. 189), and Dr. Hernández Colón filed one on November 30, 1984 (Tr. 196). Both RFC assessments state work capabilities consistent with a "moderate" work rating. The ALJ consulted the "GRID" on the basis of moderate capacity, claimant's age, skills level, and education. Such a combination of factors would have indicated a finding of not disabled. Since a non-exertional limitation was also present, (in this case inability to balance, stoop, squat, kneel, or crawl other than occasionally), *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 525 (1st Cir.1989), the ALJ did not blindly apply the GRID finding of not disabled, but instead heard testimony from a vocational expert regarding availability of jobs consistent with the claimant's abilities. The vocational expert opined that jobs light in physical requirements and unskilled in nature existed in Puerto Rico in sufficient numbers. On that basis, the ALJ made a finding of not disabled.

We can summarize the medical findings which led to the 1987 ruling. The ALJ referred to the claimant's "sporadic outpatient treatment for complaints related to his back condition" (Tr. 499) during the period for which he was insured, January 1, 1982 through June 30, 1984. The clinical records show complaints of muscular spasm and strain of the lower back (Tr. 209, 152–68), but no specific findings of neurological deficits. On July 7, 1984, a full physical exam yielded a diagnosis of low back pain, probably secondary to L5–S1 old root lesion, osteoarthritis and lumbar myositis, along with a psychiatric condition (Tr. 183). The July 7th report points to mild evidence of muscle spasm at lumbar area, and a limitation of trunk flexation or extension for lateral movements because of back pain. The tandem gait was described as adequate, with an ability to walk on tip toes and heels with difficulty (Tr. 183). Diminished sensation was noted for vibration in the lower extremities, strait leg raising was possible to 80 degrees (Tr. 182, 187). An X-ray taken on July 9th of the lumbosacral spine shows normal bone density and architecture. The intervertebral spaces and vertebrae processes are well preserved (Tr. 184). A chart on lumbar region extension shows an ability to bend forward to 60 degrees from an upright position. A finding of 90 degrees would, for instance, mean the ability to bend forward, while standing, until the torso is parallel with the floor. A lateral flexation (ability to bend side to side) of 18 degrees and 15 degrees was found (Tr. 187).

In January 1985, claimant was evaluated by the Cayey State Insurance Fund dispensary. The notes from that exam show that the range of motion of claimant's trunk was slightly limited. A straight leg raising test was positive at 90 degrees. No neurological deficit, muscle weakness or spasm were found. An electromyogram was found to be negative (Tr. 257).

In February 1985, the claimant saw Dr. Juan Rodríguez Colón. Dr. Rodriguez described "exquisite tenderness at L4–L5 and L5–S1, tenderness and sever spasm of back muscles, painful motion restricted in trunk movements." The doctor reported a decrease in tactile sensation in the left leg and decreased tendon reflex in the light knee and left ankle. X-rays of the lumbosacral spine were negative. Dr. Rodríguez diagnosed a nerve root compression syndrome most probably due to a herniated disc, along with neurologic deficits of the lower extremities. He also found "severe" mental illness. Dr. Rodriguez opined that the conditions had existed since an accident suffered by claimant in 1977, and that claimant was totally incapacitated for purposes of work (Tr. 199–201). A March 27, 1985 CT was interpreted by a Dr. Luis Bonnet as showing a herniated disc with the fragment compressing the left nerve root.

The bulk of the medical evidence, then, was obtained in the period following the last day of the claimant's insured status (June 30, 1984). The relevant inquiry for purposes of the ALJ and for our review, is the presence or absence of a disability prior to June 30, 1984. The task of the ALJ was to use the post-insured period evidence to shed light on what claimant's condition was during the insured period. Although the 1987 ALJ decision discussed all of the above evidence, we were concerned by the ALJ's statement that "[t]he fact that ... the results of subsequent clinical tests may corroborate the existence of a condition at the time the claimant was last insured, cannot be construed as evidencing the existence of a severe and disabling impairment during the period in question" (Tr. 500). The sentence is ambiguous. It may mean, innocently enough, that the mere proof of existence of *some* condition during the insured period is not proof of a disabling condition during that period, but that the ALJ would have to evaluate such post-insured clinical tests to make the disability determination. On the other hand, the statement may indicate a *categorical* denial by the ALJ of the possibility that tests in the post-insured period might be probative of insured period disability. Such a refusal to evaluate the evidence with an eye to its retroactive relevance could, in our view, unfairly deny a claimant the opportunity to use whatever means were at her or his disposal to sustain the burden of proving disability. In addition, we saw that such a refusal was directly in conflict with the holding of *Deblois v. Secretary of Health and Human Services*, 686 F.2d 76 (1st Cir.1982), in which the court required the ALJ to develop the record of post-insured evidence as it might prove an insured status disability. On the theory that the ALJ might indeed have failed to evaluate the disability question in light of post-June 30, 1984 physical exams and other relevant medical data, we remanded. We wrote that "we cannot conclude that the ALJ fully considered these post-insured evaluations for their evidentiary value in relation to plaintiff's condition during the period of coverage." We ordered the Secretary "to

evaluate—and *if necessary develop*—such evidence together with all the other evidence at hand...." (Docket Document No. 8, Decision of Nov. 7, 1988).

In response, the Appeals Council, by Order dated November 25, 1988, remanded the case to an ALJ. The Council's directive stated that:

> [T]he administrative Law Judge shall take such further action as deemed appropriate, not inconsistent with the court's order of remand. For example, the Administrative Law Judge should obtain such further evidence as may be necessary to complete the administrative record relative to the entire period at issue, including, but not limited to, updated reports from all treating and examining medical sources.

### Duty of the Secretary on Remand

■ Plaintiff now urges that our remand order and the Council directive required that the ALJ seek out all of plaintiff's prior examining physicians, and to ask them each to comment on the condition of the claimant's back during the insured period. In addition, plaintiff argues that the holding in *Deblois* requires such a result. Plaintiff misreads our order, the Council directive, and *Deblois*.

Our order was directed at the danger that the ALJ was categorically refusing to view the test results reached after June 10, 1984 with an eye towards proving disability before that date. Although we suggested that development of the record might be advisable, we used permissive and not precatory language, leaving it for the Secretary to determine whether development was "necessary". We certainly did not make a finding that the evidence as developed at that time was either sufficient or insufficient to support a finding of non-disability.

Similarly, the Secretary's directive only requires the development of "such further evidence as may be necessary." The reference to "all treating and examining medical sources" is a description of those areas for development which may be necessary. It is not a mandatory directive that such development take place. Even if we were to

find that the Appeals Council specifically ordered updated reports, it is unclear what the effect of the ALJ's failure to do so would be, since such a requirement would be more than what was required to comport with our remand order. Conceivably it would be an interesting due process or statutory administrative law problem for the Appeals Council to adopt an ALJ recommendation which was reached in a manner inconsistent with the Appeals Council remand to the ALJ, *but which was consistent with* the District Court's remand order to the Secretary. We can avoid the question here, since we find that the Appeals Council remand directive did not order the development of specific evidence as the plaintiff urges.

Finally, Plaintiff's reading of *Deblois* is seriously flawed. In *Deblois*, the ALJ faced a *pro se* claimant with apparent serious mental disturbances. The claimant needed to prove that his mental condition had been disabling for a continuous period from March of 1972 through the date of the hearing. The plaintiff produced evidence of a disabling psychiatric condition from the period of 1977–79, but produced no evidence which could support a finding of continuous disability beginning before March of 1972, although it was clear from the facts presented that such information might have been easily obtained. The ALJ found that the claimant had not supplied sufficient evidence to support a finding of continuous disability. The district court affirmed. The Circuit took an unusual tact. It first restated that its "review is limited to a determination of whether the findings of the Secretary were supported by substantial evidence." *Deblois*, 686 F.2d at 79. It found that "on the evidence before [the ALJ,] the ALJ's finding that the plaintiff's psychological disability has not existed continuously since March of 1972 is supported by substantial evidence." *Id.* However, the *Deblois* court did not end its inquiry there. The court went on to find that the ALJ had a special duty to develop the record in the case, since the claim presented seemed substantial on its face, the claimant was unrepresented, and was obviously mentally impaired. *Id.* The court

then specifically ordered the Secretary to ascertain whether the experts who examined the claimant in 1977–79 could form an opinion as to his condition for the five preceding years.

 The driving force behind the *Deblois* decision is the concept that Social Security hearings are "not strictly adversarial," *Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir.1975), and that where a claimant's failures of proof may be so easily remedied by the intervention of the ALJ, it would work a substantial injustice for the ALJ to withhold such intervention. No such requirement applies where the claimant has counsel to gather and submit all the evidence that could help to establish the claimant's entitlement. Plaintiff in the case presently before us urges that *Deblois* stands for the following proposition: where post-insured status examinations are the sole or primary basis for a determination of disability during the insured status period, an ALJ is obligated to query every treating or examining physician with regard to his or her possible opinion as to the condition of the claimant *during the insured status*. *Deblois* does not set out such a rigid rule. We believe that the specific directive given to the Secretary in *Deblois* was the court's way to assure that the goal of assisting the *pro se*, psychiatrically-troubled claimant would be properly carried out, not to set up a mandatory evidentiary requirement applicable to hearings where the claimant has counsel.

In the case at bar, claimant, through his attorney, had the opportunity to gather and present whatever evidence from whatever available sources might help to prove his disability. If some or all of the treating and examining experts in this matter could have helped plaintiff to interpret their own post-insured status exams as evidencing insured status disability, plaintiff's counsel could and should have brought them before the ALJ. The only such evidence offered by claimant were the results of a February 15, 1989 reevaluation by Dr. Juan Rodriguez, which was offered and taken into account by the ALJ. The 1989 report specifically addressed the issue of what, in

that expert's view, was the condition of claimant in the relevant period.

Another reason to distinguish *Deblois* is the duration of time for which information was missing. In *Deblois*, the ALJ needed to determine, on the basis of 1977 medical exams, what condition existed in 1972. In our case medical exams began only one month after the relevant period ended. In the former, as the *Deblois* court recognized, only medical experts familiar with the case could adequately estimate the claimant's condition as it existed five years previously. In the case at bar, on the other hand, medical exams began immediately after the insured period ended. It is wholly reasonable that the ALJ could infer from the claimant's condition in July of 1984 what his condition was one month earlier. All adjudication relies on reasonable inference. In *Deblois,* a non-medically informed inference by the ALJ as to prior condition was simply not reasonable. In the present matter, it could be.

We conclude, therefore, that neither our order, the Appeals Council remand order, or *Deblois* obligated the ALJ to specifically seek out an opinion from the treating and examining physicians in this case as to the extent of claimant's condition prior to June 30, 1984. So long as a decision supported by substantial evidence was made, even though little additional evidence was before the ALJ, the Secretary's decision must stand. Our remand order was complied with by the mere fact that the ALJ abided by the rule that post-insured period exams *may* be probative of insured period conditions.

We do not mean to suggest that our order to develop such evidence "if necessary" was mere surplusage. A development of the record *was* necessary so far as a failure to so develop would render a decision unsupported by sufficient evidence. We now go on to grapple with that question. Was the Secretary's decision to deny benefits based on substantial evidence?

### Substantial Evidence: The Ultimate Issue

[¶] The ALJ, in the March 29, 1989 decision, took cognizance of the medical reports referred to previously in this decision. In addition, the ALJ took into account the February 15, 1989 letter by Dr. Juan Rodríguez. Dr. Rodríguez was the same doctor who evaluated the claimant in 1985 and found him with a probable herniated disk and a severe mental disability, and stated that claimant had been totally disabled from working since 1977, the date of the accident that originally injured the claimant's back. In his 1989 report, Dr. Rodríguez restated his prior findings, and found further that the claimant had not improved since 1985. The doctor specifically stated that it was his opinion that the claimant had not suffered any injury except the 1977 injury which could explain disc herniation.

In addition, the ALJ heard testimony from a Dr. Ramón Parrilla. Dr. Parrilla is a psychiatry specialist. Dr. Parrilla testified regarding the severity of claimant's mental incapacity during the relevant period. Dr. Parrilla was asked to evaluate the degree of any mental disability in the relevant period based on all the evidence, including evaluations done after the insured period ended. Dr. Parrilla stated that any mental condition in the relevant period was "slight".

The ALJ found that claimant's mental condition was "not significant." Claimant was treated at Cayey Mental Health Center on an outpatient basis until February 24, 1982, due to complaints about insomnia, tiredness, and sensitivity to noises. On February 24, the claimant was discharged from treatment with notes from the treating therapist that the goals set for the patient had been met. During the July 7, 1984 medical exam referred to previously, the neurologist described the claimant as moderately depressed. In February 1985, Dr. Rodríguez made his diagnosis of severe mental illness. In April 1985, the claimant returned for treatment at the Cayey Mental Health Center. He reported sleep disturbances, pain, and ill humor. He was prescribed Thorazine at that time. The ALJ points out that claimant never present-

ed any mental or intellectual limitations due to his condition, nor thought disorder, nor personality deterioration. The ALJ found that the mental conditions were not significant, since they were not relevant to his ability to work.

We can understand the ALJ's refusal to give much weight to Dr. Rodríguez' evaluation. Throughout the records in this case Dr. Rodríguez' sweeping and extreme pronouncements of total disability have been unsupported by the numerous other medical specialists involved. Even discounting Dr. Rodríguez, however, when one considers that claimant received actual outpatient treatment and medication during the relevant period, and persistent diagnosis of mental health problems following the relevant period, it is difficult for us to find substantial support for a finding that no significant mental condition existed whatsoever. Dr. Parrilla's determination that the condition was "slight" came out only after persistent prodding by the ALJ, and was based solely on the bare fact of the 1982 discharge from treatment. We go on to show, however, that the finding of not disabled is supportable on the whole record, even if this decision to downplay the mental component was ill-advised.

The ALJ is on firmer ground with his evaluation of the back problems. In the decision he frequently notes that he is evaluating the evidence from after the insured period to shed light on the condition during the insured period. In so doing, we are confident that the ALJ heeded our warning, and properly considered the potentially retroactively probative nature of post-insured period reports.

The ALJ found that the claimant's back provides a significant work limitation, probably due to a herniated disc. However, he failed to find that the condition is one of the listed conditions. Even if the ALJ had found a true herniated disc, that alone is not sufficient to make a finding of automatic liability under Step Three of the analysis. See Ortiz v. Secretary of Health and Human Services, 890 F.2d 520 (1st Cir.1989). In order to fit into the Appendix 1 listing, herniated discs (herniated nucleus pulposus) must be accompanied by the two following conditions, persisting for at least three months, and expected to last twelve months:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Although claimant's evaluations have often referred to pain and muscle spasm, all reports, with the exception of that of Dr. Rodríguez, have pointed to slight muscle weakness, slight, if any, motor loss, and no reflex loss. Even if the ALJ took into account the evidence of mild mental instability, the combination would not meet the listing requirement. In Ortiz, supra, the First Circuit faced a case of a proven herniated disc, a more severely limited motion of the spine than exhibited by the claimant in the case at bar, (ability to bend forward to 40 degrees by the Ortiz claimant as opposed to 60 degrees in this case) accompanied by dysthymia that at least moderately restricted his potential occupational base. The First Circuit not only upheld the decision that no Appendix 1 condition was present based on the combination of conditions, it found substantial evidence to support an RFC for light type unskilled work. Ortiz, 890 F.2d at 526.

Since we find no flaw in the Stage Three finding that a listed impairment was not present, and since the claimant prevailed at Step Four (the ALJ found him not able to perform past relevant work), our final review is of Stage Five.

The ALJ determined that the claimant had an RFC to perform the physical exertion requirements for light work. He found complaints of pain credible, but that they would only interfere with work that exceeded the exertion requirements for light work. He found any mental impairment to be insignificant.

The basis of the ALJ's determination as to an exertional RFC for light work is hazy in origin. There are two RFCs in the file. Both were filled out in 1984. Neither are specifically referred to by the ALJ in the

1989 decision. Both recommend a finding of an exertional RFC capacity for "medium" work. They were based on medical evidence supplied by the July 7, 1984 exam, in which low back pain was identified, probably attributable to an "old root lesion." Claimant's trunk flexibility was included, gait analysis, reflex and sensory testing, and motor system evaluation.

On the one hand, an RFC filled out before the evidence of a herniated disc was available is less than fully reliable. Though the outer manifestations of the neurological deficit might be the same, an expert who sees that the cause is a herniated disc rather than an old root lesion, might make a different assessment as to ability to work. On the other hand, the ALJ in 1989 did not accept an exertional capacity of moderate work as suggested in the RFC's, but instead reduced the capacity in claimant's case to light work.

In *Rivera–Figueroa v. Secretary of Health and Human Services*, 858 F.2d 48 (1st Cir.1988), the court refused to accept an ALJ's determination of a claimant's RFC where the determination was based solely on the ALJ's own evaluation of the medical evidence. We believe that the case at bar is distinguishable. First, although the 1984 RFC determinations are based on incomplete information, they may well have provided some medically-based guidance for the ALJ. In that sense, the ALJ was not acting completely without medically-based support. Second, while we would have been very troubled if the ALJ had merely adopted a moderate work capacity from the 1984 RFC's, he did not. He adjusted the capacity down, thereby increasing the burden on the Secretary to prove available work in the economy. Third, the *Rivera–Figueroa* court specifically noted that the RFC determination in that case, whether found to be moderate or light, would be determinative in the finding of disability. The *Rivera–Figueroa* claimant was at a point on the GRID where a light

work RFC would have indicated the presence of disability, whereas a moderate work ability would not have. In our case, that is not the situation. Even if the ALJ had found claimant to be only capable of sedentary work instead of light work, the GRID would have yielded a finding of not disabled.[1] Finally, in *Rivera–Figueroa* the ALJ's own RFC finding was internally inconsistent with some of the factual assessments made. Here, the RFC determination rests solidly on the medical evidence. The hard evidence of a herniated disc increased following the 1984 RFC recommendations. Accordingly, the ALJ downwardly adjusted the RFC, from moderate to light.

We should note that although the ALJ found the mental condition of claimant to be not significant, he took the step of asking the vocational expert to assume a moderate level limitation caused by the type of mental condition which the claimant supposedly suffered from. The vocational expert was asked whether the light work jobs which he had identified as suitable for the plaintiff would still be so despite the addition of the mental condition. The expert opined that such jobs would still suit the claimant.

### Conclusion

We are satisfied that the ALJ adequately examined the evidence with an eye to its retroactive applicability. What caused us concern was the ALJ's arrival at an RFC without a current medical expert opinion, and his failure to find any significant mental condition which would impair ability to work. However, in this case, it would appear that the decision may be substantially supported even considering those elements to be suspect. As to the first, the ALJ's RFC finding is not baseless, as we describe above. It is reasonable to assume that the ALJ built on the 1984 RFC's prepared by medical experts, and revised the RFC (in the claimant's favor) in light of the more

---

**1.** The ALJ used Rule 202.17, Table 2, Appendix 2, Subpt. P, 20 C.F.R. Part 404. On Table 2, the light work chart, Rule 202.17 corresponds to a younger individual (18–49), limited or less in education, and unskilled or no previous work experience. The chart indicates a finding of not disabled. The same criteria, if placed on Table 1, the sedentary work chart, would fall into Rule 202.18, again with a not disabled finding.

full record that developed after 1984. As to the evaluation of the medical condition, the hypothetical questions to the vocational expert indicate that even had the ALJ found a moderate mental impairment, the Secretary would still have been able to sustain his burden at Step Five. The Secretary's decision is supported by substantial evidence, and we AFFIRM.

IT IS SO ORDERED.