Lopez v. SSA                    CV-96-159-M    05/09/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Sterling Lopez

    v.                                    Civil No. 96-159-M

Shirley Chater, Commissioner
Social Security Administration


**O R D E R**


Sterling Lopez moves pursuant to 42 U.S.C.A. § 405(g) to reverse the Commissioner's decision denying him social security benefits. He asserts that the Commissioner's decision is not supported by substantial evidence in the record. The Commissioner moves to affirm the decision. For the reasons that follow, the Commissioner's decision is affirmed.


**BACKGROUND**

The parties submitted a joint statement of material facts, and plaintiff submitted a factual supplement that adds medical evidence which was included in the administrative record, although it was generated both prior to and after the relevant benefits period. Plaintiff, Sterling Lopez, does not dispute that to be eligible for social security benefits for his present claim, he had to be disabled from work after March 10, 1988, when

a previous social security decision denied him benefits, and before December 1991, when his insured status expired. Lopez contends that medical evidence outside of the eligibility period provides both a "longitudinal picture" and retrospective diagnosis of his condition during the eligibility period, and so is relevant to his disability determination.

The "longitudinal picture" referred to by Lopez originates from a phrase in the Social Security Administration's regulation describing the benefit of a treating doctor's perspective of an applicant's condition:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, <u>longitudinal picture</u> of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2) (1996) (emphasis added). Accordingly, supplemental medical information may be considered to the extent it demonstrates that plaintiff's treating physicians also treated him prior to and after the relevant period, and to the extent it provides a "longitudinal picture" of his impairments. In addition, an Administrative Law Judge ("ALJ") may consider medical evidence from a prior period, but only for the limited purpose of understanding background facts and cumulative medical

2

history about the claimant.  <u>Frustaglia v. Secretary of H.H.S.</u>, 829 F.2d 192, 193 (1st Cir. 1987).

Retrospective diagnoses (medical opinions of claimants' impairments which relate back to the covered period) may be considered only to the extent that such opinions both substantiate a disability that existed during the eligible period and are corroborated by evidence contemporaneous with the eligible period.  <u>See</u> <u>Evangelista v. Secretary of H.H.S.</u>, 826 F.2d 136, 140 (1st Cir. 1987); <u>see also, e.g.</u>, <u>Adams v. Chater</u>, 93 F.3d 712, 714 (10th Cir. 1996); <u>Perez v. Chater</u>, 77 F.3d 41, 48 (2d Cir. 1996); <u>Jones v. Chater</u>, 65 F.3d 102, 103-04 (8th Cir. 1995); <u>Flaten v. Secretary of H.H.S.</u>, 44 F.3d 1453, 1457-62 (9th Cir. 1995).  Accordingly, the following is a summary of the parties' stipulated facts with relevant additional evidence taken from plaintiff's supplement.

## A.    <u>Evidentiary Background</u>

Sterling Lopez was forty-eight years old at the time of the administrative hearing, in August 1994, on his application for social security benefits.  He had a high school education.  He worked at Phillips Andover Academy from 1979 to 1986 in maintenance, which included repair work and installing flooring materials. He also worked as a cabinet maker from 1977 to 1979.

3

Lopez's first medical treatment for the condition that is the subject of his application for benefits was provided at the Exeter Clinic in May 1986.  He complained of vertigo and described seeing flashing lights and other visual disturbances. In June 1986, he began treating with Dr. Michael Lannon for vertigo.  He was also treated by Dr. Richard Levy, a neurologist, and Dr. Thomas Hackett, a roentgenologist.  Lopez underwent a series of tests resulting in a primary diagnosis of multiple sclerosis.  Despite various treatments, Lopez continued to suffer symptoms of vertigo and vision disturbance which kept him from working.

In December 1986, Lopez began treating with Dr. Stephen Kott, a neurologist at the Lahey Clinic Medical Center in Boston. Dr. Kott continued to treat Lopez into 1994.  Dr. Kott's initial diagnosis was that Lopez did not have multiple sclerosis, but was suffering from migraine headaches and anxiety.  Lopez was examined by Dr. Kveton, an otolaryngologist at Lahey Clinic, in January 1987.  Dr. Kveton noted Lopez's continuing symptoms. Testing and treatment at the Lahey Clinic continued to focus on migraines and anxiety, with some concern about other disease involvement.  A cerebral angiogram in June 1987 revealed narrowing of the vertebral arteries, which was diagnosed as vertebral basilar insufficiency.  In March 1988, Dr. Kott wrote

4

to Lopez and told him that the majority of his symptoms were related to migraine, stress, and tension.

In April 1988, Dr. Kveton noted in the record that Lopez complained of severe tinnitus (noise) in his left ear and occasional tinnitus in his right ear, monthly episodes of a loss of balance, and trouble reading. Dr. Kveton referred Lopez to Dr. Jules Friedman at Braintree Hospital for an otoneurology (the nervous system pertaining to the ear) evaluation in May 1988. Dr. Friedman's testing showed normal results for Lopez's ear membranes, canals and hearing, but abnormal results for the vestibular system indicating a "well-compensated lesion" within the vestibular system. Dr. Friedman stated that although Lopez's symptoms were greater than the objective findings of deficit, his symptoms were typical of the condition, and he suggested retraining exercises.

In November 1988, Dr. Lannon wrote a letter on Lopez's behalf to a retirement fund in which he provided his opinion that while Lopez's diagnosis was uncertain, his symptoms caused him to be totally disabled.

Dr. Kott examined Lopez again in January 1989 and noted a prior episode of vertigo along with new symptoms of numbness in the left foot and hand. Testing revealed no weakness and no signs of nerve damage or carpal tunnel syndrome, but x-rays

5

showed some degenerative disc disease at the C5-6 level. Dr. Kott prescribed medications for hypertension, for distress associated with dizziness, and to control anxiety, as well as aspirin. Dr. Kott noted that Lopez's symptoms continued in February along with tendinitis in his right shoulder and periodic visual disturbances similar to migraine episodes. An MRI of Lopez's cervical spine showed only a minimal cervical bulge at C5-6. Dr. Kott's opinion at that time was that Lopez was disabled.

Lopez was examined by Dr. R. Kirk Bohigian, an otolaryngologist at Lahey Clinic, in September 1989. At that time, Lopez complained of persistent vertigo, increased dizziness, and imbalance. Based on Lopez's history, Dr. Bohigian diagnosed right vestibular dysfunction. An audiogram test done in October 1989 was normal.

Also in October, Dr. Kott noted increased frequency of vertigo which at times was severe enough to cause Lopez to fall to the ground. He wrote that Dr. Dennis Poe was treating Lopez for Meniere's disease--hearing loss, tinnitus, and vertigo caused by disease in the ear labyrinth. Lopez was prescribed medication for hypertension and for seizures which helped his symptoms. In November, Dr. Kott reported that Lopez was a bit better and that a test for blood flow had unremarkable results. Dr. Kott

indicated in an attending physician's statement that Lopez was still totally disabled from work due to a combination of his impairments, but he suggested training for sedentary work.

In January 1990, Dr. Kott reported that Lopez was experiencing daily dizziness and had one episode of vertigo during the month. His vision disturbance and tinnitus was not active but he complained of headaches. Lopez continued on his previous medications. Dr. Kott concluded that although Lopez's symptoms had changed and some were better, he was still disabled by dizziness and loss of balance. He did not know if the dizziness and loss of balance was due to anxiety or vestibular dysfunction.

Dr. Poe examined Lopez again in June 1990 following three vertigo spells. He diagnosed vertigo caused by right Meniere's disease, migraines, and vestibular imbalance.

In October 1990, Dr. Kott reported Lopez's symptoms as daily headaches, vertigo, increased imbalance, light headedness and blurred vision. His anti-seizure medication was increased to three doses per day. Dr. Kott's assessment was possible Meniere's disease, migraines, anxiety, and vertebral artery stenosis. An MRI scan of the head in November was consistent with a prior scan done in 1986 showing an old area of atrophy or

vascular obstruction on the lower left side with no other abnormalities.

In February 1991, Dr. Lindsey, an ophthalmologist at Lahey Clinic, examined Lopez and diagnosed ocular migraines, nearsightedness, and age-related changes in the eyes. Dr. Kott reported Dr. Lindsey's findings to Dr. Lannon along with the other recent diagnoses.

Dr. Poe noted in June 1991 that Lopez's imbalance continued with moderate vertigo which he thought was probably caused by a combination of Meniere's disease and vestibular dysfunction. However, by July 1992, Dr. Poe had revised his diagnosis, concluding that Lopez had only a migraine complex and not Meniere's disease, because his symptoms did not arise from the inner ear.

Dr. Kott examined Lopez in August 1992 finding the same possible diagnoses as he had previously — migraines, decreased hearing, vertigo, and possible Meniere's disease. In September, Dr. Kott completed an attending physician's statement in which he reported Lopez's various medical conditions and stated that Lopez was then incapable of minimal sedentary activity. Lopez was evaluated by the outpatient physical therapy department at Lahey Clinic in December 1992 on Dr. Kott's referral. The physical therapist determined that Lopez did not need regular physical

8

therapy and instead could follow a program at home for improving his balance.

In July and August 1993, Lopez's medical records through December 1991 were reviewed by two Disability Determination Services physicians for state benefits eligibility. The first DDS physician made diagnoses of migraines and vertigo, found no exertional limitations, but limited work to exclude ladders, machinery, or working at heights. That opinion was affirmed by the second DDS physician.

On December 27, 1993, Dr. Kott wrote that he diagnosed Lopez's symptoms as Meniere's disease, migraines, and anxiety. In the same letter, Dr. Kott wrote: "I have felt that this symptom frequency and severity was sufficient to render him totally disabled. I do not feel there has been any significant change in his condition and that he still should be considered disabled because of the above-mentioned conditions." Two months later Lopez discussed the possibility of working in a janitorial position with Dr. Kott, and he noted in the record that although Lopez could try to work, he believed Lopez's symptoms qualified him for disability benefits.

## B. Procedural Background

Lopez first filed an application for benefits in October 1986. That application was denied on March 10, 1988, and the decision was upheld by the Appeals Council. In that decision, the Commissioner found that Lopez suffered from intermittent migraine headaches, chronic vertigo, and occasional visual difficulties, and concluded that he could do sedentary work as long as he was protected from dangerous machinery and heights. Lopez filed the present application in July 1993. An administrative hearing was held in August 1994. The ALJ determined that the prior decision precluded Lopez's application for benefits based on disability alleged prior to March 10, 1988. Lopez's earnings records show that he last met the insured status requirement for social security benefits eligibility on December 31, 1991.

Lopez attended the hearing on August 30, 1994, with a representative and testified that his symptoms had continued since 1986, but that there had been some improvement over time. He said that he experienced vertigo spells, difficulties with balance, dizziness, migraine headaches, pain in his neck and shoulder, numbness in his left side, particularly his hand and foot, visual disturbances, ringing in his ears, and anxiety. The vertigo episodes, as Lopez described them, were preceded by a burning sensation on his face and visual disturbances and

progressed to an intense high-speed spinning feeling with a loss of orientation. The vertigo episodes occurred two to three times per month and lasted for about twenty minutes, but Lopez testified that he needed between a day and three days to recover from the resulting weakness and fatigue. Lopez explained that dizziness was part of his constant balance problem.

Lopez also testified that he had tried to return to work in July 1994 without success. He worked for two weeks in a school janitorial job which exacerbated his symptoms so that he had to resign the position.

With regard to his daily activities, Lopez testified that he could drive as long as he was feeling well, although night driving was a problem. He said that he did very few household chores and rarely went into stores because of difficulty with imbalance. He said that he attended a church camp with his family each summer.

The ALJ found that Lopez could not return to his prior work but that he had not been disabled during the relevant period between March 1988 through December 1991. In support of his decision, the ALJ determined that Lopez's description of his impairments was not entirely credible and that Dr. Kott's assessment of Lopez's functional capacity was based on Lopez's subjective complaints rather than objective medical findings and

was not supported by other evidence in the record.  The ALJ concluded that Lopez was capable of performing light work that did not require balancing, driving, or operating dangerous machinery or similar equipment.  The ALJ then referred to the Medical-Vocational Guidelines ("the Grid") and found that even at the sedentary exertional level, Lopez was not disabled.  20 C.F.R. Pt. 404, Subpt P, App. 2, §§ 201.27-29; § 201.21; § 201.22; §§ 202.20-22.

The Appeals Council denied Lopez's request for a review of the ALJ's determination in January 1996, making the ALJ's decision the final decision of the Commissioner.  Thereafter, the present action was filed in this court.  Lopez now moves to reverse the Commissioner's decision on grounds that the decision is not supported by substantial evidence in the record, and the Commissioner moves to affirm.

## STANDARD OF REVIEW

After a final determination by the Commissioner and upon request by a party, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  42 U.S.C.A. § 405(g).  The Commissioner's factual findings are conclusive if

supported by substantial evidence. <u>Id.</u>; <u>Irlanda-Ortiz v. Secretary of H.H.S.</u>, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>see also</u> <u>Rodriquez Pagan v. Secretary of H.H.S.</u>, 819 F.2d 1, 3 (1st Cir.1987).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence. <u>Ortiz</u>, 955 F.2d at 769; <u>Burgos Lopez v. Secretary of H.H.S.</u>, 747 F.2d 37, 40 (1st Cir. 1984). The court will defer to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. <u>Frustaglia</u>, 829 F.2d at 195. Accordingly, the Commissioner's decision to deny benefits will be affirmed unless it is based on a legal or factual error. <u>Manso-Pizarro v. Secretary of H.H.S.</u>, 76 F.3d 15, 16 (1st Cir. 1996).

## <u>DISCUSSION</u>

The ALJ made his determination that Lopez was not disabled within the relevant period at the fifth step of the sequential

13

analysis.[1]  At the fifth step, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, he retains the residual functional capacity to do work other than his prior work and that work the claimant can do exists in significant numbers in the national and regional economies.  20 C.F.R. § 404.1520(f); Keating v. Secretary of H.H.S., 848 F.2d 271, 276 (1st Cir. 1988).  Lopez challenges the ALJ's determination on three grounds: (1) that the ALJ improperly discounted the opinions of Lopez's treating physicians; (2) that the ALJ erroneously found that his testimony was not entirely credible; and (3) that the ALJ improperly relied on the Grid to satisfy the Commissioner's burden at step five.  Each issue is examined in turn.

---

[1]  The ALJ is required to consider the following five steps when determining if a claimant is disabled:
   (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
   (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
   (3) whether the impairment meets or equals a listed impairment;
   (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
   (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1995).

## A.  Medical Opinions

Lopez is correct that a treating physician's medical opinion generally is entitled to greater weight than an opinion of a nonexamining physician.  20 C.F.R. § 404.1527(d).  In addition, there is no question that Dr. Kott had a long-term treating relationship with Lopez and that Dr. Kott is a specialist in neurology, an appropriate specialty to treat Lopez's condition.  See § 404.1527(d)(1)-(6).  Lopez also acknowledges that Dr. Kott, and Lopez's other treating physicians, had difficulty ascertaining a consistent medical diagnosis for Lopez's reported symptoms, but the ALJ nevertheless accepted the diagnoses of Meniere's disease and vertebral basilar insufficiency, and Lopez does not suggest that the ALJ rejected other appropriate medical diagnoses.  Cf. Weiler v. Shalala, 922 F. Supp. 689, 697-98 (D. Mass. 1996) (ALJ improperly rejected treating physician's medical diagnosis).  The DDS reviewing physicians' assessments, completed in July and August of 1993, based on all of Lopez's medical evidence through December 1991, gave diagnoses of migraines and recurrent vertigo.

The ALJ did not accept Dr. Kott's (or other physicians') conclusions that Lopez was totally disabled by his symptoms and conditions.  Because the social security disability determination is the responsibility of the ALJ, opinions of others as to

15

disability may be considered only as evidence of the severity of a claimant's impairments, and have no other significance in decision making. 20 C.F.R. § 1527(e). The physician's statements completed by Dr. Kott in October of 1989 and 1992 do not specifically address Lopez's exertional limitations — in each Dr. Kott gives his opinion that Lopez is incapable of even sedentary activity, but without providing any information about Lopez's particular strength or mobility limitations. Lopez does not point to evidence in the record that shows that Dr. Kott, or any other source, tested or evaluated his exertional abilities. As the ALJ notes, the record does include a report from the Lahey Clinic physical therapy department, where Lopez was evaluated for balance retraining and exercise. The physical therapist concluded that Lopez's vestibular hypofunction was not related to his complaints of dizziness and vertigo and that regular physical therapy was not needed as he could follow a home program to improve his balance.

The DDS physicians' assessment indicates a residual functional capacity for all work without exertional limitations but with nonexertional limitations due to vertigo. The assessment determined that Lopez's vertigo impairment precluded jobs which required climbing, or heights, or working with machinery. Assessments by state agency consulting physicians are

16

properly considered as part of the record evidence. 20 C.F.R. § 404.1527(f). While a report by a nonexamining doctor that consists of merely checking boxes on a form to indicate functional capacity is entitled to little weight, this assessment also included the physician's evaluative comments, which adds to its significance. <u>See</u> <u>Berrios Lopez v. Secretary of H.H.S.</u>, 951 F.2d 427, 431 (1st Cir. 1991).

Accordingly, the ALJ gave appropriate weight to the treating physicians' medical opinions and did not err in failing to give controlling weight to the treating physicians' opinions that he was "totally disabled." In addition, the ALJ did not interpret Lopez's medical records himself to determine an RFC, but instead relied on the assessments provided by both the treating and consulting physicians. <u>Cf.</u> <u>Rivera-Figueroa v. Secretary of H.H.S.</u>, 858 F.2d 48, 52 (1st Cir. 1988) (ALJ's own assessment of RFC from medical data not substantial evidence).

## B. <u>Credibility</u>

The ALJ determined that Lopez's subjective complaints of impairment were not entirely credible based on the medical and other record evidence, as well as Lopez's testimony about his daily activities. Lopez contends that the record supports his credibility.

17

An ALJ must evaluate a claimant's subject complaints in light of the Avery factors.  Avery v. Secretary of H.H.S., 797 F.2d 19 (1st Cir. 1986).  Under Avery, the ALJ was required to consider: "(1) the nature, location, onset, duration, frequency, radiation, and intensity of pain;  (2) any precipitating or aggravating factors;  (3) the type, dosage, effectiveness and adverse side-effects of any pain medication;  (4) any treatment, other than medication, for the relief of pain;  (5) any functional restrictions;  and (6) the claimant's daily activities."  Dedis v. Chater, No. 95-302-43, 1997 WL 64029, at *8 (D. Mass. Feb. 11, 1997).

Lopez testified at the hearing, in response to questions from his representative and the ALJ, about his symptoms and his activities.  The ALJ noted that despite Lopez's description of his symptoms, including vision disturbances, he continued to drive and was using a circular saw in September of 1993, which, the ALJ decided, damaged Lopez's credibility concerning the disabling nature of his complaints.  The physical therapist's report in December 1992 that Lopez did not need regular physical therapy for his balance undermined his claim of disabling impairment in that regard.  The ALJ found Lopez's activities of driving to do errands, light housework, occasional hunting and fishing, visiting, eating at restaurants,  watching television,

18

listening to the radio, and reading, all demonstrated that Lopez's activities were not significantly changed since the onset date of March 10, 1988.[2]  The ALJ also found no evidence in the medical record to support exertional limitations on Lopez's ability to do work and found medical support only for Lopez's complaint of vertigo two or three times each month (although the ALJ did not credit Lopez's description of the two or three day recovery period from each episode).  Consequently, the ALJ concluded that despite Lopez's subjective complaints he was not disabled by his claimed impairments.

When a claimant's subjective complaints are appropriately considered in light of the Avery factors, the credibility determination is left to the ALJ.  Frustaglia, 829 F.2d at 195.  Accordingly, as the ALJ's credibility findings are properly supported by the record, they stand.

_____

[2]  Lopez challenges the ALJ's conclusion that his condition had not changed, perhaps forgetting that the onset date for purposes of this application was not 1986 when Lopez first stopped working, but March 1988, following the previous denial of benefits.  In the March 1988 decision, the ALJ stated that the medical evidence established that Lopez had severe migraine syndrome with chronic vertigo and peripheral vestibular neuronitis.  At that time, the ALJ found from the evidence submitted by Lopez that he was capable of reading, tying flies for his fishing tackle, and installing plastic insulation on the windows of his home.  At the 1994 hearing, Lopez testified that his condition had improved since the ALJ's unfavorable decision in 1988.

C. **Use of the Grid**

The Grid is not an appropriate shortcut for the vocational aspect of the Commissioner's burden at step five when a claimant's nonexertional limitations are significant. <u>See Heggarty v. Sullivan</u>, 947 F.2d 990, 996 (1st Cir. 1991). In this case, however, the ALJ found that Lopez's credible impairment, related to vertigo episodes occurring two or three times a month and lasting for twenty minutes each, did not significantly restrict his ability to do the full range of light work. The ALJ then used the Grid to determine that jobs existed that he could perform either at that exertional level or at the sedentary level. Given the ALJ's credibility determination limiting the scope of Lopez's subjective complaints, Lopez's argument that his vertigo is a significant nonexertional limitation on his ability to work is misplaced.

As substantial evidence exists in the record to support the ALJ's determination that Lopez is able to perform work at the light work or sedentary exertional levels as provided in the Grid, the ALJ's conclusion that Lopez was not disabled within the relevant period is affirmed.

**CONCLUSION**

20

For the foregoing reasons, Lopez's motion to reverse the Commissioner's decision (document no. 7) is denied, and the Commissioner's motion to affirm (document no. 10) is granted. The clerk of court is directed to close the case.

**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

May 9, 1997

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.